**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| INTERLOGIC OUTSOURCING, INC., *et al.*,[1] | ) | Case No. 19-31445-hcd |
|  | ) |  |
| Debtors. | ) | (Joint Administration Requested) |
|  | ) |  |

**DEBTORS' EMERGENCY MOTION FOR ENTRY OF INTERIM AND
FINAL ORDERS (I) AUTHORIZING POST-PETITION SECURED
SUPERPRIORITY FINANCING PURSUANT TO BANKRUPTCY CODE
SECTIONS 105(a), 362, 364(c)(1), 364(c)(2), 364(c)(3) AND 364(d), (II) AUTHORIZING
THE DEBTORS' USE OF CASH COLLATERAL PURSUANT TO BANKRUPTCY
CODE SECTION 363(c), (III) GRANTING ADEQUATE PROTECTION
PURSUANT TO SECTIONS 361, 363 AND 364 OF THE BANKRUPTCY
CODE, (IV) MODIFYING THE AUTOMATIC STAY AND (V) SETTING
FINAL HEARING PURSUANT TO BANKRUPTCY RULES 4001(b) AND 4001(c)**

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), hereby respectfully submit this motion (this "Motion") for entry of an interim order, substantially in the form attached hereto as **Exhibit A** (the "Interim Order"), and a final order (the "Final Order," and together with the Interim Order, the "DIP Orders"),[2] pursuant to sections 105(a), 361, 362, 363, and 364 of title 11 of the United States Code, 11 U.S.C. §§101– 1532 (the "Bankruptcy Code"), rule 4001, 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), rule 200-1 of the Local Rules for the United States District Court for the Northern District of Indiana (the "Local Rules") and rule B-9013-1 of the Local Rules of the United States Bankruptcy Court for the Northern District of Indiana (the "Local Bankruptcy Rules"), (a) authorizing the Debtors to obtain secured post-petition financing from

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include:  Interlogic Outsourcing, Inc. (1273); IOI Payroll Services, Inc. (1202); TimePlus Systems, LLC (9477); IOI West, Inc. (1405); Lakeview Technology, Inc. (1451); Lakeview Holdings, Inc. (7589); and ModEarn, Inc. (3473).  The location of the Debtors' headquarters is:  1710 Leer Drive, Elkhart, Indiana 46514.

[2]  The Debtors will file the form of Final Order prior to the Final Hearing (as defined below).

KeyBank National Association ("KeyBank"), as lender under the DIP Credit Agreement (as defined below) (the "DIP Lender"), (b) authorizing the Debtors to use cash collateral, (c) granting adequate protection to the Pre-Petition Secured Creditor (as defined below), (d) modifying the automatic stay, and (e) scheduling a final hearing. In support of this Motion, the Debtors respectfully represent as follows: [3]

## Jurisdiction and Venue

1.      The United States Bankruptcy Court for the Northern District of Indiana (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. The Debtors confirm their consent, pursuant to Bankruptcy Rule 7008 to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The bases for the relief requested herein are sections 105, 361, 362, 363 and 364 of the Bankruptcy Code, Bankruptcy Rules 4001, 6003, and 6004, Local Rule 200-1, and Local Bankruptcy Rule B-9013-1.

## Relief Requested

4.      By this Motion, the Debtors seek entry of the DIP Orders, *inter alia*:

  a.      authorizing the Debtors to obtain emergency post-petition financing (the "DIP Facility") pursuant to that certain Debtor in Possession Credit and Security Agreement (the "DIP Credit Agreement"), substantially in the form attached to the Interim Order as Exhibit A, for the purpose of:

---

[3]    A detailed description of the Debtors and their business, and the facts and circumstances supporting the Debtors' chapter 11 cases, are set forth in greater detail in the *Declaration of Daniel Wikel, Chief Restructuring Officer of Interlogic Outsourcing, Inc., in Support of Debtors' Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed in connection with the Debtors' voluntary petitions for relief filed under chapter 11 of the Bankruptcy Code on August 11, 2019 (the "Petition Date"). Capitalized terms used but not otherwise defined in this Motion shall have the meanings ascribed to them in the First Day Declaration.

(1)     funding the Debtors' day-to-day operations and working capital needs in accordance with and as limited by the budget for the DIP Credit Agreement, attached as <u>Exhibit B</u> to the Interim Order (the "<u>Budget</u>");

(2)     making adequate-protection payments and other payments as provided in the DIP Orders; and

(3)     upon entry of a Final Order (as defined below), paying in full all outstanding Pre-Petition amounts under the Pre-Petition Note (as defined below), including without limitation all outstanding principal, plus accrued interest, fees, and expenses (the "<u>Roll-Up</u>");

b.     approving the DIP Credit Agreement and all other agreements, documents, notes, certificates, and instruments executed and/or delivered with, to, or in favor of the DIP Lender, including, guaranties and all other related agreements, documents, notes, certificates, and instruments executed and/or delivered in connection therewith or related thereto (collectively, as may be amended, modified, or supplemented and in effect from time to time, the "<u>DIP Loan Documents</u>");

c.     granting the DIP Lender the following Liens (as defined in section 101(37) of the Bankruptcy Code) (the "<u>DIP Liens</u>") and claims:

(1)     first-priority priming, valid, perfected, and enforceable liens, subject only to the Carve-Out and the Permitted Liens upon the Collateral (each as defined in the Interim Order), as provided in and as contemplated by the DIP Orders and the DIP Loan Documents; and

(2)     allowed superpriority administrative claim status in respect of all obligations under the DIP Loan Documents (collectively, the "<u>DIP Obligations</u>"), subject to the Carve-Out;

d.     authorizing the Debtors' use of cash collateral on an interim basis until the date that the Final Order has been entered (the "<u>Interim Period</u>");

e.     granting certain adequate protection, including, among other things, Adequate Protection Liens and Superpriority Claims (each as defined in the Interim Order) and certain other adequate protection as described in the Interim Order, to the Pre-Petition Secured Creditor (as defined below), in each case, to the extent of any diminution in the value of the Pre-Petition Secured Creditor's interests in the Pre-Petition Collateral (as defined in the Interim Order), as adequate protection for the granting of the DIP Liens to the DIP Lender, the use of Cash Collateral, subordination to the Carve-Out, and for the imposition of the automatic stay;

f.      modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Loan Documents;

g.      upon entry of, and subject to the terms of, a Final Order, approving the Roll-Up, consisting of up to $1,475,000 in respect of outstanding obligations for monies advanced under the Pre-Petition Note, plus fees and expenses incurred by the Pre-Petition Secured Creditor;

h.      waiving any applicable stay (including under Bankruptcy Rule 6004) and provision for effectiveness of the Interim and Final Orders; and

i.      scheduling a final hearing (the "Final Hearing") to consider entry of the Final Order and granting the relief requested in this Motion on a final basis, and approving the form of notice with respect to the Final Hearing.

## I.      The Debtors' Prepetition Capital Structure

5.      As of the Petition Date, the Debtors had approximately $1,705,000 of outstanding funded indebtedness (the "Pre-Petition Secured Debt") from outstanding Promissory Notes, as defined below.

## II.      The Debtors' Prepetition Note Holders

6.      The Debtors are indebted as follows:

a.      under that certain Promissory Note in the maximum principal amount of $641,520 dated as of October 1, 2018 by and among Interlogic Outsourcing, Inc. and Lake City Bank N.A. of which $229,106 is presently outstanding;

b.      under that certain Demand Promissory Note in the maximum principal amount of $1,475,000 dated as of July 19, 2019 by and among IOI, IOI West, Inc., Lakeview Technology, Inc., Lakeview Holdings, Inc., IOI Payroll Services, Inc., and TimePlus Systems, LLC (the "Pre-Petition Borrowers"), and KeyBank, as lender (the "Pre-Petition Secured Creditor") (the "Pre-Petition Note");

c.      under those certain Guaranties of Payment dated as of July 19, 2019 and executed by IOI West, Inc., Lakeview Technology, Inc., Lakeview Holdings, Inc., IOI Payroll Services, Inc., TimePlus Systems, LLC, and ModEarn, Inc., (collectively, the "Pre-Petition Guarantors") in favor of the Pre-Petition Secured Creditor (collectively, the "Pre-Petition Guaranties"); and

4

d.     in respect of each of the foregoing, accruing interest, costs, fees and expenses.

## III.     Summary of the Material Terms of the DIP Facility[4]

7.     The following chart contains a summary of the material terms of the DIP Credit

Agreement and the Interim Order, in accordance with Bankruptcy Rule 4001(b)(1).[5]

| MATERIAL TERMS | SUMMARY DESCRIPTION |
|---|---|
| Amount/Facility: | Non-amortizing term loan debtor-in-possession credit facility, in an amount equal to the sum of (a) $6,325,000 in new-money loans and (b) a dollar-for-dollar roll-up of (i) $1,475,000 of outstanding principal obligations only under the Pre-Petition Note, and (ii) accrued interest, fees, and expenses incurred under the Pre-Petition Note.  Any amounts borrowed under the DIP Facility may not be re-borrowed. |
| Borrowers: | InterLogic Outsourcing, Inc., IOI West, Inc., Lakeview Technology, Inc., Lakeview Holdings, Inc., IOI Payroll Services, Inc., TimePlus Systems, LLC |
| Guarantor: | ModEarn, Inc. |
| DIP Lender: | KeyBank National Association |
| Security:<br><br>*See* DIP Credit Agreement, Recitals pg. [2]. | The postpetition credit obligations are (i) secured by first-priority, priming Liens on all of Debtors' property and interests, real and personal, tangible and intangible, whether now owned or hereafter acquired, subject only to those certain Permitted Liens and to certain claims in respect of the Carve Out; and (ii) given superpriority administrative claim status with priority over all other administrative expense claims, subject only to the Carve Out. |
| Maturity Date:<br><br>*See* DIP Credit Agreement § 1.1. | The earliest to occur of (a) October 31, 2019 (b) the effective date of a plan of reorganization or liquidation in the chapter 11 case and (c) the effective date of a sale of all or substantially all of the Debtors' assets or business pursuant to Section 363 of the Bankruptcy Code which is authorized by the Bankruptcy Court (and in the event of a series of transactions resulting in the sale of all or substantially all of the Debtors' assets, the last of such sales to close or consummate). |
| Availability/Use of | Up to $5,500,000 shall be available to the Debtors upon entry of |

---

[4]   The description of the terms of the DIP Credit Agreement and the proposed Interim Order provided in this Motion are intended only as summaries.  In the event of any inconsistency between the descriptions set forth herein and the terms of the DIP Credit Agreement or the Interim Order, the terms of the DIP Credit Agreement and the Interim Order shall govern.

[5]   Capitalized terms used but not otherwise defined in the chart have the meanings ascribed to them in the DIP Credit Agreement of the Interim Order, as applicable.

5

| | |
|---|---|
| **Proceeds:**<br><br>*See* DIP Credit Agreement § 1.1, 5.18. | the Interim Order.<br><br>The proceeds of all Term Loans may be used for the general corporate and working capital purposes of the Debtors in accordance with the then current Budget or such variance thereof as is expressly permitted under the terms of DIP Credit Agreement. |
| **Mandatory Prepayment:**<br><br>*See* DIP Credit Agreement § 2.11. | Sale of Assets.  On the third Business Day after receipt by any Debtor of net cash proceeds from any sale or other disposition of any assets by such Debtor, such Debtor shall make a Mandatory Prepayment (as defined in the DIP Credit Agreement) in an amount equal to one hundred percent (100%) of the net cash proceeds.<br><br>Material Recovery Event.  On the third Business Day after receipt by any Debtor of any net cash proceeds from a Material Recovery Event (as defined in the DIP Credit Agreement), such Debtor shall make a Mandatory Prepayment in an amount equal to one hundred percent (100%) of such cash proceeds (net of reasonable costs, and taxes incurred in connection with such Material Recovery Event); *provided that*, with the prior consent of the DIP Lender (which consent may be granted or withheld in the DIP Lender's sole discretion), such Debtor may apply such proceeds to repair or replace assets lost or damaged in connection with such Material Recovery Event and no such repayment shall be required to the extent of such application of proceeds. |
| **Prepayment Premium:** | None. |
| **Interest Rate:**<br><br>*See* DIP Credit Agreement § 2.4(a). | Fourteen percent (14%) per annum, payable in arrears in full on the Maturity Date. |
| **Default Rate:**<br><br>*See* DIP Credit Agreement § 1.1. | (a) With respect to any Loan or other Obligation, a rate per annum equal to three percent (3%) in excess of the rate otherwise applicable thereto, and (b) with respect to any other amount, if no rate is specified or available, a rate *per annum* equal to seventeen percent (17%). |
| **Conditions Precedent to First Credit Event:**<br><br>*See* DIP Credit Agreement § 4.2. | Customary for transactions of this type and otherwise satisfactory to the DIP Lender and to include: (a) entry of the Interim Order by the Bankruptcy Court, (b) execution and delivery of the DIP Credit Agreement by the Debtors to the DIP Lender, (c) execution and delivery to the Lender of the Term Loan Note, (d) [Reserved], (e) [Reserved], (f) [Reserved], (g) [Reserved], (h) entry of the First Day Orders (as defined in the DIP Credit Agreement), (i) [Reserved], (j) delivery by the Debtors to the DIP Lender of (i) the results of Uniform |

| | |
|---|---|
| | Commercial Code lien searches, satisfactory to the Lender, and (ii) the results of federal and state tax lien and judicial lien searches, satisfactory to the DIP Lender, (k) [Reserved], (l) delivery by the Debtors to the DIP Lender of evidence of personal property and liability insurance in amounts reasonably satisfactory to DIP Lender with DIP Lender listed as loss payee and additional insured, (m) delivery by the Debtors to the DIP Lender to DIP Lender an officer's certificate certifying that, as of the Closing Date, (i) assuming the satisfaction of conditions applicable to Lender, all conditions precedent set forth in this Section 4.2 have been satisfied (or waived), (ii) no Default or Event of Default exists nor immediately after the making of the first of the Term Loans will exist, and (iii) each of the representations and warranties contained in Article VI hereof are true and correct in all material respects as of the Closing Date, except to the extent that any thereof expressly relate to an earlier date, in which case they shall be true and correct in all material respects as of such earlier date, (n) on or prior to the Closing Date, Borrowers shall have prepared the initial Budget and the DIP Lender shall have approved the initial Budget, in its sole discretion; provided, that, if the DIP Lender does not object to the initial Budget within three (3) Business Days, such initial Budget shall be deemed to be approved by the DIP Lender, (o) [Reserved], (p) Debtors shall have provided to the DIP Lender such other items and shall have satisfied such other conditions as may be reasonably required by the DIP Lender. |
| **Conditions Precedent to Subsequent Credit Events:**<br><br>*See* DIP Credit Agreement § 4.1. | Customary for transactions of this type and including: (a) all conditions precedent as listed in Section 4.2 of the DIP Credit Agreement required to be satisfied prior to the first Credit Event shall have been satisfied prior to or as of the first Credit Event, (b) entry of the Final Order (unless the Interim Order is still in full force and effect), (c) the Debtors shall have submitted a Notice of Loan and otherwise complied with Section 2.6 of the DIP Credit Agreement, (d) no Default or Event of Default shall then exist or immediately after such Credit Event would exist; and (e) each of the representations and warranties contained in Article VI hereof shall be true and correct in all material respects (or, as to any representations and warranties which are subject to a materiality or Material Adverse Effect qualifier, true and correct in all respects) as if made on and as of the date of such Credit Event, except to the extent that any thereof expressly relate to an earlier date, in which case they shall be true and correct in all material respects (or, as to any representations and warranties which are subject to a materiality or Material Adverse Effect qualifier, true and correct in all respects) as of such earlier date. |

| | |
|---|---|
| **Reporting:**<br><br>*See* DIP Credit Agreement § 5.3. | Customary for transactions of this type and including providing copies of all written reports provided to any Statutory Committee by or on behalf of any Debtor, weekly updated Budgets, Accounts Payable Aging reports, certain financial information upon request of the DIP Lender, any notices of litigation, any notices of setoffs claims, withholdings or other defenses to which any of the Collateral or the DIP Lender's rights to the Collateral are subject, and auditors' reports. |
| **Events of Default:**<br><br>*See* DIP Credit Agreement Art. VIII. | The list of events, acts and omissions that constitute an "Event of Default" are many and are defined in Article VIII of the DIP Credit Agreement. |
| **Indemnity:**<br><br>*See* DIP Credit Agreement § 10.5. | The Debtors are agreeing to indemnify the DIP Lender for any losses incurred and in any manner relating to the DIP Credit Agreement, as more specifically set forth in section 10.5 of the DIP Credit Agreement. |
| **Section 506(c)**<br><br>*See* Interim Order at ¶ 23. | Nothing contained in this Order or the DIP Loan Documents, nor any action or inaction of the Pre-Petition Secured Creditor or the DIP Lender, shall be deemed to be a consent by either of them to any charge, lien, assessment or claim against any of the Collateral under Sections 506(c) or 552 of the Bankruptcy Code or otherwise, other than the Carve-Out.  In light of their agreement to subordinate their liens and superpriority claims to the Carve-Out and Permitted Liens, as applicable, the rights of the estate under section 506(c) of the Bankruptcy Code or otherwise to surcharge the Collateral securing Pre-Petition Obligations owed to the Pre-Petition Secured Creditor and Post-Petition Obligations owed to the DIP Lender are waived. |

## Basis for Relief

8.    In order for Debtors to continue to operate their business, and preserve their goodwill and going concern value, it is necessary for Debtors to obtain immediate postpetition financing and use of "cash collateral" as defined under section 363 of the Bankruptcy Code (the "Cash Collateral") to enable them to pay normal operating expenses (including, without limitation, wages, salaries, insurance premiums, utilities, rent and taxes).  Without such postpetition financing and use of Cash Collateral, the Debtors will be unable to operate their business.  The ability of the Debtors to finance their operations and the availability to the Debtors of sufficient working capital and other financial and general corporate liquidity through

8

post-petition financing and use of Cash Collateral is in the best interests of the Debtors and their estates.  The interim financing and use of Cash Collateral authorized by this Order is vital to avoid immediate and irreparable harm to the Debtors' business, property, and estates and to allow the orderly continuation of the Debtors' business.

**I.      Entering into the DIP Facility Is an Exercise of the Debtors' Sound and Reasonable Business Judgment**

9.      The DIP Facility is critical to the Debtors' ability to effectuate these Chapter 11 Cases.  As described above, virtually all of the Debtors' assets are encumbered by the liens and security interests of the Pre-Petition Secured Creditors, there are no unencumbered funds with which the Debtors can pay ongoing, day-to-day operation expenses such as wages, rent, and utilities.  The only acceptable proposal to provide the necessary financing was in the form of secured credit, with an allowance of superpriority administrative claims.

10.      Under section 364(c) of the Bankruptcy Code, the Bankruptcy Court may enter the Interim Order authorizing the Debtors to obtain postpetition financing from the DIP Lender pursuant to the terms of the DIP Credit Agreement, in the form of secured credit with a superpriority administrative claim.  Courts may authorize debtors in possession to obtain secured credit under 364(c) upon finding that the debtors were "unable to obtain unsecured credit allowable under section 503(d)(1) of the [Bankruptcy Code]."  11 U.S.C. § 364(c); *see also In re Olde Prairie Block Owner, LLC*, 448 B.R. 482, 492 (Bankr. N.D. Ill. 2011) ("[A] debtor can obtain credit secured by a senior or equal lien on encumbered estate property (sometimes referred to as a 'priming lien') with court approval and after notice and a hearing only if: (1) the debtor is unable to obtain credit otherwise and (2) the interest of the creditor to be primed is adequately protected."); *In re L.A. Dodgers LLC*, 457 B.R. 308, 312 (Bankr. D. Del. 2011) (denying the motion for authorization to enter into a post-petition credit facility where the

debtors could not prove that they were unable to obtain unsecured credit allowable as an administrative expense); *In re Ames Dep't Stores*, 115 B.R. 34, 37–39 (Bankr. S.D.N.Y. 1990) (finding that the debtor must show it has made a reasonable effort to seek alternative sources of financing under section 364 of the Bankruptcy Code).

11.    Courts rely on a three-part test to determine whether debtors are entitled to financing under section 364(c).  Courts will look for whether:

      a.    The debtors were unable to obtain unsecured credit with only an administrative claim;

      b.    The credit transaction is necessary to preserve the assets of the estate; and

      c.    The terms of the transaction are fair, reasonable, and adequate, given the circumstances of the debtor and the lender.

*See L.A. Dodgers LLC*, 457 B.R. at 312; *Ames*, 115 B.R. at 37–39.

12.    Whether debtors were unable to obtain unsecured credit is determined by application of the "good faith effort" standard, and debtors must make a good-faith effort to demonstrate that credit was not available without granting a security interest.  *See In re 1191 Wood Run, LLC*, 2010 WL 3310353, at *1 (Bankr. N.D. Ill. March 24, 2010) (applying the "good faith effort" standard to the debtor's request for postpetition financing); *In re YL West 87th Holdings I LLC*, 423 B.R. 421, 441 (Bankr. S.D.N.Y. 2010) ("Courts have generally deferred to a debtor's business judgment in granting section 364 financing."); *In re Gen. Growth Props., Inc.*, 412 B.R. 122, 125 (Bankr. S.D.N.Y. 2009).

13.    As set forth in detail in the First Day Declaration, the Debtors sought and were unable to obtain financing from other sources on terms preferable to the proposed DIP Facility. Therefore, the Debtors do not believe that they are able to obtain postpetition financing or other financing accommodations from any prospective lender or group of lenders on more favorable terms and conditions than those offered under the proposed DIP Facility.

14.     Whether the proposed DIP Facility is necessary to preserve the assets of the estate is determined by application of the business judgment standard. *See Ames*, 115 B.R. at 40 ("Cases consistently reflect that the court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms and leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit parties in interest").

15.     The DIP Credit Agreement and terms of the proposed Interim Order were negotiated in good faith extensively over several weeks, by sophisticated parties who were each represented by their own experts and independent counsel. The DIP Lender is not an insider (as defined in section 101(31) of the Bankruptcy Code) of any of the Debtors. Over the course of many drafts, the terms and conditions improved for the benefit of the Debtors and are the best terms available under the circumstances. The terms of the DIP Facility and other factors such as the DIP Lender's existing familiarity with the Debtors' debt structure, operations and assets, as well as the speed with which the funds can be accessed, made the DIP Facility the best proposal available to the Debtors. In sum, the Debtors respectfully submit that the proposed findings in the Interim Order under section 364(e) of the Bankruptcy Code are reasonable, necessary, and supported by the facts and circumstances of these cases.

16.     As discussed above and in the First Day Declaration, the Debtors have an urgent need to obtain access to credit, to, among other things, continue the operation of their businesses. Without rapid access to the additional liquidity the DIP Facility will provide, the Debtors will be unable to fund critical components of their business, including, vendors, suppliers, and employee payroll. The inability to continue these operations would be highly detrimental to the value of the Debtors' business as a going concern and jeopardize their ability to achieve a successful

restructuring. As a result, the Debtors ultimately determined in their sound business judgment that the DIP Facility represents the best available post-petition financing under the circumstances.

17. The Debtors believe that the terms of the proposed DIP Facility are fair and reasonable in light of current market conditions and are in the best interest of the Debtors' estates. Additionally, the security interests and administrative expense claims granted to the DIP Lender by the proposed DIP Facility and Interim Order are subject to the Carve-Out, which is reasonable and necessary to ensure that official committees, if any, and the Debtors will be assured of the assistance of counsel. *See Ames*, 115 B.R. at 40.

18. For the foregoing reasons, the Debtors have determined, in the exercise of their sound business judgment, that they require the financing under the terms of the DIP Facility and the use of cash collateral pursuant to the terms and conditions of the Interim Order, and hereby request the Court's approval of the DIP Facility.

## II.    Granting Senior Liens under Section 364(d) Is Warranted

19. If the debtor is unable to obtain credit solely under the provisions of section 364(c) of the Bankruptcy Code, the court, after notice and a hearing, may authorize the debtor to obtain credit secured by a senior or equal lien on the property of the estate that is already subject to a lien. Section 364(d) provides that a debtor may obtain credit secured by a priming lien under 364(d) if:

       a.     the debtor is unable to obtain such credit otherwise; and

       b.     there is adequate protection of Pre-Petition Lienholder.

20. As previously noted, substantially all of the Debtors' assets are encumbered, and obtaining financing from an outside lender without granting a priming lien on the Debtors' assets was not feasible. Following extensive solicitation for refinancing and recapitalization, the

Debtors were unable to find a sufficient offer of secured credit to provide the much needed liquidity. The DIP Lender has outstanding liens on the Debtors' assets, pursuant to the Pre-Petition Note.  In order to finance the restructuring of the Pre-Petition debt held by the Pre-Petition Secured Creditor, including obtaining liquidity through the course of these chapter 11 cases, the DIP Lender required that the Debtors grant the DIP Lender senior liens.  The Debtors were unable to secure additional liquidity without granting a lien with the priority set forth in the Interim Order.

21.    As required by section 364(d) of the Bankruptcy Code, the DIP Credit Agreement and the Interim Order provide adequate protection to the Pre-Petition Secured Creditor, in the form of Adequate Protection Liens, superpriority administrative expense claims and post-petition interest, in each case in accordance with the terms of the DIP Credit Agreement and the Interim Order.

### III.    Use of Cash Collateral and Grant of Adequate Protection Is Necessary and Appropriate

22.    In addition to the need for debtor-in-possession financing, the Debtors require immediate use of the Cash Collateral in accordance with the Budget and the Interim Order.  The Debtors require use of Cash Collateral to be able to pay the Debtors' operating expenses, including payroll and other overhead costs (such as rent and utilities), and to pay third parties and vendors to ensure a continued supply of inventory.  Without access to immediate liquidity, the Debtors will suffer irreparable harm.

23.    Bankruptcy Code section 363(c)(2) provides that the Debtors may not use, sell, or lease cash collateral unless: "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section."  In addition, section 363(e) of the Bankruptcy Code provides that

13

"on request of an entity that has an interest in property used… or proposed to be used… by a [debtor in possession], the court, with or without a hearing, shall prohibit or condition such use… as is necessary to provide adequate protection of such interests."  Here, the requisite Pre-Petition Secured Creditor has consented to the Debtors' use of the Pre-Petition Cash Collateral.  To the extent any other creditor has a security interest on the Cash Collateral, the Debtors request that the Court grant the Debtors authority to use the Cash Collateral pursuant to section 363(c)(2) of the Bankruptcy Code.

24.    The determination of adequate protection is a fact-specific inquiry to be decided on a case-by-case basis.  *See In re EES Lambert Assocs.*, 62 B.R. 328, 343 (Bankr. N.D. Ill. 1986) (noting the "case by case development of adequate protection"); *In re Mosello*, 195 B.R. 277, 288 (Bankr. S.D.N.Y. 1996) (noting that "its application is left to the vagaries of each case… but its focus is protection of the secured creditor from diminution in the value of its collateral during the reorganization process") (quoting *In re Beker Indus. Corp.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986)).  The Debtors submit that the proposed adequate protection, as described above, is fair and reasonable and in accordance with the principles of the Bankruptcy Code.

25.    Based upon the foregoing, the Debtors respectfully request that the Court authorize the Debtors to access the Cash Collateral, and to provide the adequate protection in accordance with the terms set forth in the Interim Order.

## IV.    Modification of the Automatic Stay

26.    The Interim Order contemplates modifying the automatic stay under section 362 of the Bankruptcy Code to the extent necessary to permit the performance of any act authorized or permitted under, or by virtue of, the Interim Order or the DIP Credit Agreement.

14

27.     Stay modification provisions of this type are standard features of post-petition debtor in possession financings and, in the Debtors' business judgment, are reasonable under the present circumstances.  Accordingly, the Debtors respectfully request that the Court authorize the modification of the automatic stay in accordance with the terms set forth in the DIP Orders.

## V.     The Interim Order Should Be Granted

28.     Bankruptcy Rules 4001(b) and (c)(2) provide that a final hearing on a motion to use cash collateral pursuant to section 363 of the Bankruptcy Code or to obtain credit under section 364 of the Bankruptcy Code may not be commenced earlier than 14 days after the service of such motion.  Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on such a motion and to authorize the use of cash collateral and the obtaining of credit to the extent necessary to avoid immediate and irreparable harm to a debtor's estate.

29.     The Debtors respectfully request that the Court schedule and conduct an initial hearing on the Motion and authorize the Debtors, from the time of the entry of the Interim Order until the Final Hearing, to obtain credit up to the Interim Amount (as defined in the Interim Order) under the terms contained in the DIP Credit Agreement and to utilize the Cash Collateral to the extent set forth in the DIP Credit Agreement and Interim Order.

30.     Bankruptcy Rule 6003 provides that a bankruptcy court may grant certain forms of relief during the 21 days immediately following the filing date, to the extent necessary to avoid immediate and irreparable harm. As described in detail above and in the First Day Declaration, the Debtors have an immediate need to obtain access to liquidity in under the DIP Facility, in order to operate their businesses, maintain critical relationships with vendors, suppliers and customers, make payroll and fund other working capital and operational needs.

31.     The Debtors seek authority pursuant to the Interim Order to use the Cash Collateral, to enter into the DIP Loan Documents, and to borrow up to an aggregate principal

amount of $5,500,000 on an interim basis and $7,800,000 on a final under the DIP Facility.  This

relief contemplated in the Interim Order will provide the liquidity and resources needed to allow

the Debtors to operate in the ordinary course and therefore avoid immediate and irreparable harm

and prejudice to the businesses and all parties in interest pending the Final Hearing.

**Waiver of Bankruptcy Rule 6004(a) and 6004(h)**

32.     To implement the foregoing successfully, the Debtors request that the Court enter

an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a)

and that the Debtors have established cause to exclude such relief from the 14-day stay period

under Bankruptcy Rule 6004(h).

**Notice**

33.     Notice of this Motion has been provided to:  (a) the Office of the U.S. Trustee for

the Northern District of Indiana; (b) the holders of the 30 largest unsecured claims against the

Debtors (on a consolidated basis); (c) counsel to KeyBank National Association; (d) the United

States Attorney's Office for the Northern District of Indiana; (e) the Internal Revenue Service;

(f) the United States Securities and Exchange Commission; (g) the state attorneys general for all

states in which the Debtors conduct business; (h) the Utility Providers; and (i) any party that

requests service pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested,

the Debtors submit that no other or further notice is necessary.

**No Prior Request**

34.     No previous request for the relief sought herein has been made to the Bankruptcy

Court or any other court.

WHEREFORE the Debtors respectfully request that the Court enter the DIP Orders, granting the relief requested herein, and granting such other relief as is just and proper.

Dated: August 12, 2019
    South Bend, Indiana

/s/ *Andrew T. Kight*

Andrew T. Kight
Michael W. Hile
Christine K. Jacobsen
**JACOBSON HILE KIGHT LLC**
The Elliott House
108 East 9th Street
Indianapolis, Indiana 46202
Telephone: (317) 608-1140

- and -

Matthew M. Murphy (*pro hac vice* admission pending)
Nathan S. Gimpel (*pro hac vice* admission pending)
Michael Whalen (*pro hac vice* admission pending)
Matthew Smart (*pro hac vice* admission pending)
**PAUL HASTINGS LLP**
71 South Wacker Drive, Suite 4500
Chicago, Illinois 60606
Telephone: (312) 499-6000
Facsimile: (312) 499-6100

*Proposed Co-Counsel to the Debtors and Debtors in Possession*