UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| In re: | | Chapter 11 |
| INTERLOGIC OUTSOURCING, INC., et al[1] | | Case No. 19-31445-HCD |
| Debtors. | | (Jointly Administered) |

**LIMITED OBJECTION OF WELLS FARGO TO DEBTORS' EMERGENCY MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING POST-PETITION SECURED SUPERPRIORITY FINANCING PURSUANT TO BANKRUPTCY CODE SECTIONS 105(a), 362, 364(c)(1), 364(c)(2), 364(c)(3) AND 364(d); (II) AUTHORIZING THE DEBTORS' USE OF CASH COLLATERAL PURSUANT TO BANKRUPTCY CODE SECTION 363(c); (III) GRANTING ADEQUATE PROTECTION PURSUANT TO SECTIONS 361, 363 AND 364 OF THE BANKRUPTCY CODE; (IV) MODIFYING THE AUTOMATIC STAY; AND (V) SETTING FINAL HEARING PURSUANT TO BANKRUPTCY RULES 4001(b) AND 4001(c)**

As and for its objection to the above referenced motion [ECF No. 15] (the "DIP Motion"),[2] Wells Fargo Bank NA ("Wells Fargo"), by and through the undersigned counsel, files this *Limited Objection to the DIP Motion* (the "Objection"), averring as follows:

**RELIEF REQUESTED**

1.      Wells Fargo is a depository bank holding three of the Debtors' bank accounts. By this Objection, Wells Fargo seeks entry of an Order denying the DIP Motion to the extent that it seeks to place a restriction on Wells Fargo's ability to maintain a freeze on the Debtors' Accounts and exercise its setoff rights. Under Bankruptcy Code Section 506(a)(1), Wells Fargo's setoff claim constitutes a secured claim and no "public filing" is necessary to enforce that right. Furthermore, the Debtors' DIP Motion has failed to demonstrate adequate protection for Wells

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Interlogic Outsourcing, Inc. (1273); IOI Payroll Services, Inc. (1202); TimePlus Systems, LLC (9477); IOI West, Inc. (1405); Lakeview Technology, Inc. (1451); Lakeview Holdings, Inc. (7589); and ModEarn, Inc. (3473). The location of the Debtors' headquarters is: 1710 Leer Drive, Elkhart, Indiana 46514.

[2] All defined terms hereinafter employed shall have the same meaning set forth in the DIP Motion unless otherwise defined.

Fargo. Accordingly, the DIP Motion should be denied because, in derogation of Wells Fargo's security interest and setoff rights, it provides an invalid "priming" lien to KeyBank, as the DIP lender, and an invalid "replacement" lien to KeyBank, as the Pre-Petition Secured Creditor. The DIP Order must carve out Wells Fargo's security interest and setoff rights from any such "priming" or replacement liens.

## FACTUAL BACKGROUND

2. Wells Fargo provided Interlogic Outsourcing, Inc. ("Interlogic" or "IOI") and TimePlus Systems, LLC ("TimePlus") with certain financial services, as described in the Master Agreement for Treasury Management Services (attached as **Exhibit 1**) and the Commercial Account Agreement (the "CAA") (attached as **Exhibit 2**). Wells Fargo maintained three bank accounts, two for Interlogic (account numbers ending in 3144 and 9462) and one for TimePlus (account number ending in 9454) (collectively, the "Accounts"). *See* Cash Management Motion [ECF No. 7], at ¶ 7.

3. On July 9, 2019, KeyBank commenced an action in the United States District Court for the Northern District of Ohio for preliminary and permanent injunctive relief. *KeyBank, N.A. v. Interlogic outsourcing, Inc.*, *et al.*, no. 19-cv-01566 (the "KeyBank Action"). In its amended complaint, KeyBank alleges willful breach of contract and fraud against Interlogic and the principal owner, president and CEO of Interlogic, Najeeb Khan. KeyBank seeks that Wells Fargo, among other entities, hold, pending orders of distribution from the court, certain funds Interlogic and Khan directed KeyBank to transfer by wire.

4. On July 10, 2019, Wells Fargo received a Temporary Restraining Order sent on behalf of KeyBank (the "Key Bank TRO") in the KeyBank Action, alleging that Interlogic had

fraudulently wire transferred $220 million of uncollected funds to Wells Fargo and two other banks.

5. Wells Fargo has incurred a significant overdraft with regard to one Interlogic account of approximately $1.5 million.[3] As a result of this overdraft, Wells Fargo intends to exercise its right of setoff. Wells Fargo has also implemented an administrative freeze pending the filing of its setoff motion. In addition, Wells Fargo reserves the right to assert claims similar to those sets forth in the KeyBank Action with respect to the Accounts.

6. As of August 12, 2019, the Interlogic accounts at Wells Fargo had: (i) a balance of approximately $721,000, and (ii) an overdraft of approximately $1.5 million. As of August 12, 2019, the TimePlus account had a balance of approximately $2.1 million.

7. On Monday, July 15, 2019, Wells Fargo sent to Interlogic a letter communicating its intent to cease all services on the Accounts. The letters provided to Interlogic and TimePlus stated that:

> Wells Fargo Bank,N.A. ("Bank") has determined that it is no longer in the mutual best interests of Bank and [Interlogic/TimePlus] ("Company") to continue to maintain a deposit account and treasury management relationship. Pursuant to the terms of your Master Agreement for Treasury Management Services and Commercial Account Agreement with the Bank, please be advised that all deposit and treasury management services and related agreements are terminated effective immediately. Due to potential return items, including but not limited to any ACH return activity, your deposit account numbers ending in . . . have been frozen to all debit and credit activity effective immediately, and will be closed once such trailing activity has been resolved.

Letter from Brian Ruger (Wells Fargo) to Daniel Wikel (Interlogic), dated July 15, 2019 (a true and correct copy of which is attached hereto as **Exhibit 3**).

---

[3] Wells Fargo is currently in the process of reconciling the Accounts since the KeyBank TRO so all amounts stated in this Objection are estimates.

8. Pursuant to the CAA, Wells Fargo has liens and setoff rights over the funds in the Accounts. Wells Fargo's contractual setoff rights are as follows:

> To secure Company's performance of this Agreement, Company grants Bank a lien on and security interest in Company's Account and Company's accounts with any Affiliate. In addition, Company acknowledges Bank may setoff against any Account(s) (including matured and unmatured time Account(s)) for any obligation Company owes Bank at any time and for any reason as allowed by the laws governing this Agreement. These obligations include both secured and unsecured debts and debts Company owes individually or together with another person. Bank may consider this Agreement as Company's consent to Bank's asserting its security interest or exercising its right of setoff should the laws governing this Agreement require Company's consent.

CAA, at p. 28.

## LIMITED OBJECTION TO DIP MOTION

9. The DIP Motion provides that the DIP Lender shall have a priming lien against all prepetition collateral which includes the Accounts (defined below) against which Wells Fargo is asserting its right of setoff: In this regard the DIP Motion States:

> The liens and security interests herein granted to the DIP Lender shall, pursuant to Section 364(d)(1) of the Bankruptcy Code, prime (i) any other liens (other than the Permitted Liens) **not perfected and a matter of public record under applicable law as of the Petition Date** or that are otherwise avoidable or can be set aside for any reason, subject in each case to the CarveOut; and (ii) any liens, claims or rights arising under 18 U.S.C. §§ 981, 982, and/or 1963 (including without limitation any and all forfeiture claim(s), right(s), lien(s), and/or proceeding(s) relating to or arising under same), subject in each case only to the Carve-Out.

DIP Motion, ¶ 12 (emphasis added).

10. Bankruptcy Code Section 506(a)(1) also provides that Wells Fargo's setoff rights constitute a secured claim. This secured claim does not require the filing of a "public record,"

4

which is the exception KeyBank provides for in its carve-out from the priming lien. Section 506(a)(1) provides, in pertinent part, as follows:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, **is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be**, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

11 U.S.C. § 506 (emphasis added).

11. The right of a bank to exercise its right of setoff has been established by the US Supreme Court. *See Citizens Bank of Maryland v Strumpf*, 516 US 16 (1995). "In order to effect a setoff, in or outside of the bankruptcy context, the creditor need be holding the funds of the debtor." *In re Tillery*, 179 B.R. 576, 581 (Bankr. W.D. Ark. 1995). "Once those funds are turned over, there can be no 'setoff.'" *In re Gehrke*, 158 Bankr. 465, 468 (Bankr. N.D. Iowa 1993) ("Once the deposit is paid out, there is no longer a debt which the bank may offset against a debt the depositor owes the bank. Turnover to the trustee of the debtor's property precludes any subsequent claim of setoff by the creditor who had held the property."). "There is no method in the Bankruptcy Code by which the creditor can compel a debtor to return the entire amount of the funds in order to effect a setoff." *In re Tillery*, 179 B.R. at 581. "Once those funds are in the hands of the debtor or trustee, the right to setoff is gone." *Id.* "The creditor has lost its lien, as provided by section 506, and, its right to setoff." *Id.*

12. Accordingly, Wells Fargo is not obligated to relinquish possession of the Accounts until the Court has determined whether Wells Fargo has the right to offset, or setoff, the Accounts

against the amounts owed to Wells Fargo pursuant to Sections 542(b) and 553(a) of the Bankruptcy Code.

13. "Section 553(a) provides in relevant part that the Bankruptcy Code does not alter a creditor's right to offset 'a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case.'" 11 U.S.C. § 506(a) ("An allowed claim of a creditor . . . that is subject to setoff under section 553 of this title is a secured claim . . . to the extent of the amount subject to setoff."); *Gulfcoast Workstation Corp. & Relational Fund Corp. v. Peltz (In re Bridge Info. Sys.)*, 314 B.R. 421, 428 (Bankr. E.D. Mo. 2004).

14. In the instant case, Wells Fargo is owed a pre-petition debt in the amount of $1.5 million. Wells Fargo is holding the Accounts of Interlogic and TimePlus—a debt—and that debt arose prior to the commencement of the bankruptcy case. Moreover, the CAA expressly provides Wells Fargo with its right to set off and includes both Interlogic's and TimePlus' consent to such setoff. *See* CAA, at p. 28.

15. Accordingly, Wells Fargo may properly set off the Accounts. Further, the amount of debt that Wells Fargo is entitled to set off ($1.5 million) constitutes a secured claim against the debtor's estate. 11 U.S.C. § 506(a); *Gulfcoast*, 314 B.R. at 428.

16. In the instant case, Debtors have failed to demonstrate that Wells Fargo's interests are adequately protected, sufficient for this Court to deny the relief requested herein, as the Debtors lack any legal authority to prime setoff rights. "Section 553 of the United States Bankruptcy Code incorporates and preserves the right of setoff available at common law." *Schneider Nat'l, Inc. v. Bridgestone/Firestone, Inc.*, 200 F. Supp. 2d 1006, 1009 (E.D. Wis. 2001). This right is not expressly addressed in Section 364 with regard to the priming of interests for DIP loans. Though

courts frequently enter DIP orders with expansive language priming setoff rights, no authority seems to support this practice. Indeed, New Jersey Bankruptcy Judge Morris Stern lectured counsel seeking to prime setoff rights, advising that the Bankruptcy Code provides no support for such an argument. In pertinent part, Judge Morris said,

> If Title 11 can't affect any right of a creditor to setoff but for 362 and 363 I think you have no argument at all. And to the extent that you've advanced this argument in many courts I think you've made a mistake and the courts, if they've granted it, have made a mistake. There's no impact on setoff rights by virtue of the bankruptcy code if 553 is complied with except with respect to automatic stay and certain aspects of 363 which are totally irrelevant here.

*In re St. Mary's Hospital*, No. 09-bk-015619 [ECF No. 140] (Bankr. D. N.J. Mar. 31, 2009), at 67:3-11.

17. Additionally, Section 506 uses both the terms "lien" and "setoff" in defining a secured claim, thus distinguishing between these two concepts. Thus, the text of Sections 364, 506 and 553 provide support for the view that setoff rights cannot be primed under Section 364.

## **RESERVATION OF RIGHTS**

18. All of the Debtors' first day motions were filed on an emergency basis giving Wells Fargo little time to review the motions and supporting documents in advance of the hearing to be held on August 14, 2019. Wells Fargo reserves its right to raise additional objections to the DIP Motion and any interim or final orders entered in the Debtors' cases.

## **PROPOSED REVISIONS TO DIP ORDER**

19. Wells Fargo has proposed to Debtors' counsel certain limited revisions to the Debtors' form of DIP Order, which would address Wells Fargo's interim objections. The proposed language is as follows:

> The liens and security interests granted to the DIP Lender and Pre-Petition Secured Creditor under this Interim Order pursuant to Section 364(d)(1) shall not include

any lien on accounts held by Wells Fargo Bank, N.A. or affect the rights of Wells Fargo Bank, N.A. to assert its security interests or set-off rights.

## CONCLUSION

WHEREFORE, based upon the foregoing, Wells Fargo respectfully requests that this court deny the entry of the order on the DIP Motion in its current form and such other and further relief as the Court may deem just and proper.

Dated: August 14, 2019

Respectfully submitted,

BAKER & MCKENZIE LLP

By: /s/ James Donnell
James Donnell (*pro hac vice* pending)
Peter S Goodman (*pro hac vice* pending)
James.Donnell@bakermckenzie.com
Peter.Goodman@bakermckenzie.com

ROTHBERG LOGAN & WARSCO LLP

By: /s/ Mark A. Warsco
Mark A. Warsco
Supreme Court No. 1626-02
Jared C. Helge
Supreme Court No. 27152-02
505 East Washington Blvd.
P. O. Box 11647
Fort Wayne, Indiana  46859-1647
Tel:  (260) 422-9454
E-mail:  mwarsco@rlwlawfirm.com
E-mail:  jhelge@rlwlawfirm.com
**Attorneys for Wells Fargo Bank NA**

## CERTIFICATE OF SERVICE

I hereby certify that on August 14, 2019, a true and correct copy of the aforementioned Objection was served upon counsel for the Debtor, the U.S. Trustee, counsel for the Unsecured Creditors Committee, and all persons identified on the Master Service List dated August 13, 2019, via either the Court's CM/ECF system or physically upon all persons not identified as having received service electronically, in accordance with Local Rules.

Dated: August 14, 2019                             /s/ Mark A. Warsco