UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| In re: <br><br> INTERLOGIC OUTSOURCING, INC., *et al.*,[1] <br><br> Debtors. | Chapter 11 <br><br> Case No. 19-31445-hcd[2] <br><br> (Jointly Administered) |

**MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
FOR ENTRY OF ORDER CONFIRMING STANDING AND AUTHORITY TO BRING
CLAIMS AGAINST KEYBANK ON BEHALF OF THE DEBTORS' ESTATES**

The Official Committee of Unsecured Creditors, (the "Committee") appointed in the jointly-administered chapter 11 cases (the "Chapter 11 Cases") of Interlogic Outsourcing, Inc., *et al.* (collectively, the "Debtors"), by and through its undersigned counsel, hereby files its Motion of the Official Committee of Unsecured Creditors for Entry of an Order Confirming Standing and Authority to Bring Claims against KeyBank on Behalf of the Debtors' Estates (the "Motion"). In support of the Motion, the Committee respectfully states as follows:

**PRELIMINARY STATEMENT**

1.  The Committee seeks confirmation of its standing and authority in accordance with that certain *Final Order (I) Authorizing Post-Petition Secured Superpriority Financing Pursuant to Bankruptcy Code Sections 105(a), 362, 364(c)(1), 364(c)(2), 364(c)(3) and 364(d),*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Interlogic Outsourcing, Inc. (1273); IOI Payroll Services, Inc. (1202); TimePlus Systems, LLC (9477); IOI West, Inc. (1405); Lakeview Technology, Inc. (1451); Lakeview Holdings, Inc. (7589); and ModEarn, Inc. (3473). The location of the Debtors' headquarters is: 1710 Leer Drive, Elkhart, Indiana 46514.

[2] As noted herein, on January 21, 2020, the United States Bankruptcy Court for the Northern District of Indiana (the "Indiana Court") entered an Order transferring these Chapter 11 Cases to the United States Bankruptcy Court for the Western District of Michigan (the "Michigan Court"). Because the Michigan Court has not yet opened case numbers for the transferred Chapter 11 Cases, this Motion has been filed in the Indiana Court, with the understanding that it will be ruled on by the Michigan Court once the transfer is complete.

1

CO\6312357.9

*(II) Authorizing the Debtors' Use of Cash Collateral Pursuant to Bankruptcy Code Section 363(c), (III) Granting Adequate Protection Pursuant To Sections 361, 363 and 364 of the Bankruptcy Code, And (IV) Modifying the Automatic Stay* (the "Final DIP Order") [Dkt. No. 264], to challenge the purported claims of KeyBank, N.A. ("KeyBank"), along with any liens obtained by KeyBank against the Debtors' assets within 90 days of the filing of these Chapter 11 Cases.  In the Final DIP Order, the Debtors waived their right to contest the amount and validity of the liens and claims asserted by KeyBank without prejudice of the right of the Committee to challenge the liens and claims.  *See* para. 28 of the Final DIP Order. The Committee is continuing to investigate the validity of KeyBank's liens and claims and intends to file an adversary proceeding by the February 9, 2020 extended challenge period deadline, unless further extended by agreement of the parties.  Najeeb Ahmed Khan ("Khan"), the Debtors' sole owner and principal, and his related business entities Khan Aviation, Inc., GN Investments, LLC, KRW Investments, Inc., NJ Realty, LLC, NAK Holdings, LLC and Sarah Air, LLC (the "Khan Entities"), who are debtors in the jointly administered Chapter 11 cases of *In re Khan, et al.*, Bankr. W.D. Mich. case no. 19-4258-swd, have already filed a *Complaint for Avoidance and Recovery of Transfers* (the "Khan Complaint") against KeyBank, a copy of which (without exhibits) is attached hereto as **Exhibit A,** challenging similar transfers from Khan and the Khan entities to KeyBank.  The Committee is preparing to file a complaint alleging similar claims as those asserted in the Khan Complaint, albeit with respect to transfers by the Debtors to KeyBank, as well as additional claims against KeyBank.  However, without confirmation and authorization of the Committee's standing to challenge KeyBank's liens and claims on behalf of the Debtors' estates, significant causes of action and potential recoveries will be lost to the detriment of the Debtors' estates and creditors.

CO\6312357.9

2.      Pursuant to the Final DIP Order, the Debtors acknowledged and agreed, *without any prejudice to the rights of the Committee or any other party* (subject to paragraph 28 of the Final DIP Order): (i) to the prepetition amounts allegedly owed by the Debtors to KeyBank; and (ii) that the prepetition amounts are "secured by valid, enforceable, duly perfected liens and security interests."  *See* para. G of the Final DIP Order.  However, the Final DIP Order authorizes the Committee to investigate the liens and claims asserted by KeyBank and agreed to by the Debtors and provides that any stipulations or findings contained in paragraphs F, G and H of the Final DIP Order shall not be binding on the Committee (and other parties) if an adversary proceeding or contested matter is filed with this Court challenging the validity, enforceability, or extent of those liens and claims by "not later than the date that is ninety (90) days after the date of entry of an order approving retention of counsel for the Committee and (b) this Court rules in favor of the plaintiff in any such timely filed adversary proceeding or contested matter." *See* para. 28 of the Final DIP Order.

3.      Pursuant to the Settlement Agreement entered into by the Committee, the Debtors, and KeyBank, and approved by the Court on December 5, 2019 (the "<u>Settlement Agreement</u>") [Dkt. No. 556], the deadline for the Committee to commence an adversary proceeding or contested matter against KeyBank as to the validity, amount, and priority of its liens and claims was extended through and including February 9, 2020.

4.      Accordingly, the Committee seeks confirmation of its standing to pursue claims against KeyBank on behalf of the Debtors' estates so that these significant claims and potential recoveries of the estates are not waived or lost to the detriment of the Debtors' estates and creditors.

**JURISDICTION**

5.     The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the general order of reference for this district.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

**BACKGROUND**

A.    **Prior to the Debtors' Bankruptcy Filings**

6.     On or about February 8, 2008, Debtor Interlogic Outsourcing, Inc. ("IOI"), an Indiana corporation solely owned by Khan, entered into a Cash Management Services Master Agreement ("Cash Management Agreement") with KeyBank, under which KeyBank agreed to perform cash management services for IOI in exchange for payment of certain fees.

7.     On or about December 17, 2018, IOI entered into a Third Party Sender Services Agreement with KeyBank (the "Third Party Sender Services Agreement"), which expressly incorporated the terms of the Cash Management Agreement.  Pursuant to the Third Party Sender Services Agreement, KeyBank agreed to perform Automatic Clearing House / Electronic Data Interchange Services for IOI in change for payment of certain fees.

8.     Neither the Third Party Sender Services Agreement nor the Cash Management Agreement provided for the extension of credit to IOI or any of the other Debtors, and neither agreement created a security interest in any of the Debtors' assets.

9.     On July 8 or 9, 2019, KeyBank asserts that it discovered that certain wire transfers initiated by IOI, drawn on and paid out of IOI's KeyBank account – including a wire for $90 million to Berkshire Bank, a wire for $10 million to Wells Fargo, and a wire for $22 million to JP Morgan Chase, collectively totaling more than $122 million (the "Overdraft Exposure") –

were dishonored due to insufficient funds, even though KeyBank had already wired the funds to the recipient banks (the "Overdraft Event").

10. Thereafter, on July 12, 2019, KeyBank allegedly demanded that Khan and the Debtors grant KeyBank a security interest in all of their assets to secure, among other things, Khan's and the Debtors' alleged unsecured prepetition liability to KeyBank resulting from the Overdraft Event.

11. Less than 90 days before the Petition Dates, Khan, on behalf of each Debtor, executed separate Security Agreements dated, July 12, 2019, in favor of KeyBank (each a "Security Agreement" and together the "Security Agreements"), which purport to secure all of the Debtors' and Khan's alleged indebtedness to KeyBank, then existing and thereafter incurred, including but not limited to the Overdraft Exposure and any liability related to the Overdraft Event. Each Security Agreement also purports to grant KeyBank a security interest in substantially all of each respective Debtor's assets.

12. Less than 90 days before the Petition Dates, Khan, on behalf of Debtor Lakeview Holdings, Inc., executed a Pledge Agreement, dated July 12, 2019, in favor of KeyBank (the "Pledge Agreement"), which purports to secure all of the same secured obligations allegedly owed by Debtor Lakeview Holdings, Inc. to KeyBank described in the Security Agreement between Debtor Lakeview Holdings, Inc. and KeyBank. The Pledge Agreement also purports to grant KeyBank a security interest in all of Debtor Lakeview Holdings, Inc.'s equity in Debtors IOI Payroll Services, Inc. and TimePlus Systems, LLC.

13. On July 13, 2019, at the apparent direction of KeyBank, Khan appointed Timothy Daileader ("Daileader") as an "independent director" and the sole manager of each of the

Debtors, and Daileader appointed Dan Wikel ("Wikel") as chief restructuring officer of each of the Debtors.

14. Less than 90 days before the Petition Dates, on July 19, 2019, Wikel executed a Demand Promissory Note on behalf of IOI in favor of KeyBank in the amount of $1.475 million (the "Demand Promissory Note"). It is unclear whether any funds were actually advanced pursuant to the Demand Promissory Note.

15. Less than 90 days before the Petition Dates, on July 19, 2019, Wikel (not Khan or Daileader) executed a separate Guaranty of Payment for and on behalf of each of the Debtors except for IOI (each an "Affiliate Guaranty" and together the "Affiliate Guaranties").

16. Less than 90 days before the Petition Dates, on July 19, 2019, Wikel executed a separate Amended and Restated Security Agreement for and on behalf of each of the Debtors (each an "Amended Security Agreement" and together the "Amended Security Agreements").

17. Less than 90 days before the Petition Dates, on July 19, 2019, Wikel executed separate Intellectual Property Security Agreements for and on behalf of Debtors IOI, ModEarn, Inc., and TimePlus Systems, LLC (each an "IP Security Agreement" and together the "IP Security Agreements").

18. The Amended Security Agreements and IP Security Agreements purport to secure all of the Debtors' and Khan's alleged indebtedness to KeyBank, then existing and thereafter incurred, including but not limited to any liability related to the Overdraft Event, the Demand Promissory Note, and the Affiliate Guaranties.

19. Like the Security Agreements and the Pledge Agreement, the Amended Security Agreements and IP Security Agreements each purport to grant KeyBank a security interest in substantially all of each respective Debtors' assets.

B.  **The Debtors' Bankruptcy Filings**

20. On August 10, 2019 and August 11, 2019, the Debtors filed voluntary petitions commencing these Chapter 11 Cases ("Petition Dates") in the United States Bankruptcy Court for the Northern District of Indiana, South Bend Division.

21. The liens purportedly created by the Security Agreement, the Pledge Agreement, the Amended Security Agreements, and the IP Security Agreements (the "Avoidable Liens") were all interests in property of the Debtors transferred to KeyBank within 90 days of the Petitions Dates, on account of an alleged and unsecured antecedent debt, while the Debtors were insolvent, and without conferring reasonably equivalent value.

22. On August 12, 2019, the Debtors filed their Emergency Motion for Entry of Interim and Final Orders (I) Authorizing Post-Petition Secured Superpriority Financing pursuant to Bankruptcy Code Sections 105(a), 362, 364(c)(1), 364(c)(2), 364(c)(3) and 364(d), (II) Authorizing the Debtors' Use of Cash Collateral pursuant to Bankruptcy Code Section 363(c), (III) Granting Adequate Protection pursuant to Sections 361, 363 and 364 of the Bankruptcy Code, (IV) Modifying the Automatic Stay and (V) Setting Final Hearing pursuant to Bankruptcy Rules 4001(b) and 4001(c) (the "DIP Financing Motion").

23. On August 16, 2019, the Court entered an order approving the DIP Financing Motion on an interim bases.

24. On August 22, 2019, the United States Trustee, pursuant to 11 U.S.C. § 1102, appointed the Committee.

25. On September 5, 2019, the Committee filed its objection to the DIP Financing Motion (the "Committee Objection"). Among other things, the Committee asserted that it should be granted the authority to challenge the Avoidable Liens as a condition of granting final relief

7

under the DIP Financing Motion. In its reply to the Committee Objection, the Debtors asserted that the Committee should be required to seek separate court approval to file actions to avoid the Avoidance Liens.

26. On September 12, 2019, the Court entered the Final DIP Order.

27. Paragraphs F, G, and H of the Final DIP Order makes certain admissions by the Debtors regarding (1) the validity of amounts due and owing by the Debtors to KeyBank, including liability related to the Overdraft Event (the "KeyBank Claims"); (2) the validity of the Avoidable Liens; and (3) the status of the proceeds of the any of the assets subject to the Avoidable Liens as cash collateral.

28. Paragraph 28 of the Final DIP Order provides that the factual findings in Paragraph F, G, and H "shall be binding upon all parties in interest and their respective successors and assigns, including but not limited to . . . the Committee . . . unless "the Committee or other party in interest (other than any of the Debtors) has filed an adversary proceeding or contested matter . . . challenging the validity, enforceability or priority" of the pre-petition obligations allegedly owed by the Debtors to KeyBank or the Avoidable Liens.

29. The Final DIP Order gives the Committee not more than 90 days from September 23, 2019 (or until December 22, 2019) (the "Challenge Period Deadline") within which to examine and challenge the KeyBank Claims and the validity of the Avoidance Liens.

30. The Challenge Period Deadline was subsequently extended to February 9, 2020, pursuant to the Settlement Agreement entered into by the Debtors, the Committee, and KeyBank.

31. On January 21, 2020, the United States Bankruptcy Court for the Northern District of Indiana entered an Order transferring the Chapter 11 Cases to the United States Bankruptcy Court for the Western District of Michigan, Southern Division [Dkt. No. 723].

**C.    Khan's Individual and Related Entities' Bankruptcy Filings in Michigan**

32.    On or about October 8, 2019, Khan and the Khan Entities (collectively, the "<u>Khan Debtors</u>") filed voluntary petitions for relief under chapter 11 of the United States Code in the United States Bankruptcy Court for the Western District of Michigan.

33.    On October 17, 2019, the Khan Debtors commenced an adversary proceeding against KeyBank seeking to, among other things, avoid the liens granted by the Khan Debtors to KeyBank under chapter 5 of the Bankruptcy Code (the "<u>Khan Complaint</u>").  *See* **Exhibit A** hereto.

34.    In light of the fact that the Debtors waived their right to contest the liens and claims of KeyBank pursuant to the Final DIP Order, without waiving the Committee's right to do so as long as the adversary proceeding or contested matter is commenced by February 9, 2020, the Committee believes that the Final DIP Order confers upon it the right to challenge KeyBank's liens and claims.  However, because the Final DIP Order does not expressly confer such authority while authorizing the Committee to investigate and challenge KeyBank's liens and claims by a date certain, out of an abundance of caution, the Committee now seeks an order confirming its standing under the Final DIP Order to contest KeyBank's liens and claims on behalf of the Debtors' estates, including standing to avoid the Avoidable Liens under chapter 5 of the Bankruptcy Code and applicable state law.

<b><u>BASIS FOR RELIEF</u></b>

35.    The Sixth and Seventh Circuits have recognized the authority of bankruptcy courts to confer derivative standing upon parties other than a debtor-in-possession.  *In re Trailer Source, Inc.*, 555 F.3d 231, 239–40 (6th Cir. 2009); *Fogel v. Zell*, 221 F.3d 955, 965 (7th Cir. 2000); *see also Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics*

*Corp. v. Chinery*, 330 F.3d 548, 580 (3d Cir.2003) (en banc) (holding that "bankruptcy courts can authorize creditors' committees [in Chapter 11 proceedings] to sue derivatively to avoid fraudulent transfers for the benefit of the estate."); *Glinka v. Murad (In re Housecraft Indus. USA, Inc.)*, 310 F.3d 64, 70–72 (2d Cir. 2002); *PW Enters., Inc. v. N.D. Racing Comm'n (In re Racing Servs., Inc.)*, 540 F.3d 892, 898 & n. 7 (8th Cir. 2008).

36.     Courts generally require a committee or creditor seeking derivative standing to establish that (1) a demand was made on the trustee (or debtor-in-possession) to act, (2) the trustee (or debtor-in-possession) declined, (3) a colorable claim exists that would benefit the estate, and (4) the trustee's (or debtor-in-possession's) inaction was an abuse of discretion.  *In re Trailer Source, Inc.*, 555 F.3d 231, 245 (6th Cir. 2009) (citing *Canadian Pacific Forest Products, Ltd. v. J.D. Irving, Ltd. (In re The Gibson Group, Inc.)*, 66 F.3d 1436, 1441 (6th Cir. 1995)); *Fogel*, 221 F.3d at 965; *In re Matter of Perkins*, 902 F.2d 1254, 1258 (7th Cir. 1990); *In re Xonics Photochemical, Inc.*, 841 F.2d 198, 203 (7th Cir. 1988) (holding that a creditor can seek the bankruptcy court's permission to bring derivative suit in name of debtor if it shows that the debtor-in-possession was "shirking his statutory responsibilities."); *see also Unsecured Creditors Committee of Debtor STN Enterprises, Inc. v. Noyes (In re STN Enterprises)*, 779 F.2d 901, 905 (2nd Cir. 1985).

37.     Some courts have extended this principle to permit a creditor or committee to pursue a trustee's claim when the trustee does not refuse to prosecute it but instead agrees that the committee should pursue the claims on behalf of the bankruptcy estate. *See e.g., In re Commodore International Ltd.*, 262 F.3d 96, 100 (2nd Cir. 2001) (derivative standing given to committee when the debtor-in-possession consented to prosecution by the committee in its stead); *In re Spaulding Composites Co., Inc.*, 207 B.R. 899, 903–04 (B.A.P. 9th Cir. 1997)

(bankruptcy court may confer derivative standing on committee based upon agreement of debtor-in-possession and committee).

38. Other courts have held that a demand is excused where it would be futile. *See, e.g., In re Rosenblum*, 545 B.R. 846 (Bankr. E.D. Pa. 2016) (demand excused where trustee did not have funds to pursue avoidance action); *In re National Forge Co.*, 326 B.R. 532 (W.D. Pa. 2005) (demand excused where interim and final DIP orders put all parties on notice that committee would investigate the legitimacy of the lenders' claims, and debtor had waived its rights to contest the lenders' claims by language in the DIP orders); *In re SGK Ventures, LLC*, 521 B.R. 842 (Bankr. N.D. Ill. 2014) (excusing demand where it was futile and where debtor's counsel was aware of the committee's intended action and advised committee that debtor did not intend to file a similar action itself).[3]

39. In this case, all of the elements to confer standing upon the Committee have been met.

40. First, the Debtors expressly refused and waived their independent right to challenge KeyBank's claims or liens by stipulating to the validity, extent, and amount of KeyBank's liens and claims in the Final DIP Order. Paragraph 28 of the Final DIP Order, which was drafted by the Debtors, specifically states that only the Committee or some other non-Debtor third party can challenge KeyBank's claims and liens. Any attempt by the Debtors to file an action to avoid the Avoidable Liens would be ineffective to trigger the provisions of Paragraph 28 of the Final DIP Order, and as a result, the factual findings in Paragraphs F, G, and H of the

---

[3] Courts have even permitted a debtor-in-possession or trustee to have "joint standing" in accordance with an agreement between the debtor or trustee and a creditor or committee, allowing both parties to be plaintiffs pursuing the estate's claims. *In re Housecraft Industries USA, Inc.*, 310 F.3d 64, 70–72 (2nd Cir. 2002); *In re Adelphia Communications Corp.*, 330 B.R. 364, 373 (Bankr. S.D.N.Y. 2005).

CO\6312357.9

Final DIP Order would become binding on all parties. Accordingly, the challenge period in Paragraph 28 would be meaningless and illusory if the Committee does not have standing.

41. Second, because the Debtors waived their independent rights, subject to the rights of the Committee and other parties in interest, to bring the actions against KeyBank contemplated in Paragraph 28 of the Final DIP Order, a demand on the Debtors to bring such claims would ultimately be futile. Nevertheless, out of an abundance of caution, on or about November 15, 2019, the Committee questioned Debtors' counsel as to whether the Debtors intended to bring the claims described in the Final DIP Order against KeyBank. On or about November 19, 2019, counsel for the Debtors indicated that he could not confirm whether or not the Debtors would take such action. Despite counsel for the Committee attempting several more times to have the Debtors confirm in writing their understanding of the Committee's standing, the Debtors failed to provide such assurances. That said, even if the Debtors were to ultimately bring an action, such an action would violate the terms of the Final DIP Order. Accordingly, the refusal requirement has been satisfied.

42. Third, the Committee has colorable claims to challenge the Avoidable Liens. Consistent with the Khan Complaint, the Committee seeks to challenge the Avoidable Liens under chapter 5 of the Bankruptcy Code and applicable state law. The Avoidable Liens were given on account of antecedent debts and improved KeyBank's position from an unsecured creditor to a secured creditor during the 90 days prior to the Petition Dates. And as a result of the transfer of the Avoidable Liens, KeyBank stands to recover more than it would have in a Chapter 7 case. Further, the Debtors did not receive reasonably equivalent value in exchange for the granting of the Avoidable Liens and were presumed to be insolvent at the time of the transfer of those liens. The Committee is aware of no defenses to avoidance or any other facts that might

protect the Avoidable Liens.  The Avoidable Liens, if avoided, could then be preserved for the benefit of the estates under section 551.

43.     The Committee also has a colorable cause of action to subordinate the KeyBank Claims in these Chapter 11 Cases. A bank's claim may be equitably subordinated to the claims of other creditors if it is shown that the bank's conduct was seriously inequitable and that it caused harm to other creditors.  11 U.S.C. § 510(c)(1); In re Sentinel Mgmt. Grp., Inc., 809 F.3d 958, 965 (7th Cir. 2016); *see also In re Structurlite Plastics Corp.*, 224 B.R. 27, 35 (B.A.P. 6th Cir. 1998) (recognizing an expansive reading of section 510(c)(1) in the Sixth Circuit and noting that even "no fault subordination" is appropriate in certain circumstances).

44.     With respect to any other causes of action that might be brought pursuant to Paragraph 28 of the Final DIP Order, the Committee notes that the Final DIP Order specifically provides that KeyBank's claims are in an amount to be determined.  Until those amounts are determined and claims are filed, the Committee cannot determine with finality the scope and nature of its challenges to the KeyBank claims.  Likewise, whether or not proceeds of property of the estates are KeyBank's cash collateral will only be determined once the validity of its liens is determined.

45.     Because KeyBank's liens are subject to avoidance, KeyBank's claims may also be subject to disallowance under section 502(d) of the Bankruptcy Code.  And based upon the equities of the case, the Committee can avoid the affixing of KeyBank's liens to the proceeds of estate property under section 552(b)(1).  The Committee notes that challenges under these sections are not solely held by the estates.  Section 1109 of the Bankruptcy Code specifically authorizes the Committee to be heard on these matters and therefore no additional grant of standing is needed.  However, even if the Committee could not raise these issues without Court

approval, because the Avoidable Liens and the subordination of the KeyBank Claims will directly bear upon these matters, and because the Final DIP Order precludes the Debtors from asserting such claims or avoidance actions, the Committee asserts that it has met its burden to establish its right to bring these claims on behalf of the Debtors' estates.

46. Accordingly, the Committee asserts that, based upon the language of the Final DIP Order, the Committee was conferred standing to pursue any causes of action described in Paragraph 28 of the Final DIP Order. The Debtors are expressly barred from bringing those actions due to the preclusive effect of Paragraph 28. Out of an abundance of caution, the Committee hereby requests confirmation of or the express grant by this Court of the authority and standing to bring any such claims.

## RESERVATION OF RIGHTS

47. The Committee reserves its right to supplement this Motion, or file additional motions for standing, with respect to additional evidence or other claims and/or causes of action against KeyBank and other parties on behalf of the Debtors' estates as additional information becomes available, and to file amended complaints as necessary and permitted by applicable law.

## NOTICE

48. Notice of this Motion has been provided to the following parties, or their counsel, if known: (i) the Office of the United States Trustee; (ii) the Debtors; (iii) KeyBank; and (iv) all other parties having requested notice under Bankruptcy Rule 2002. The Committee submits that the foregoing constitutes good and sufficient notice and that no other or further notice need be given.

**WHEREFORE**, the Committee respectfully requests that the Court enter an order (i) granting the Committee standing and authority to prosecute all claims contemplated by

Paragraph 28 of the Final DIP Order, including any action to avoid the Avoidable Liens or challenge KeyBank's claims, (ii) granting the Committee authority to settle such claims if appropriate in the Committee's judgment, and (iii) granting the Committee such other relief as the Court deems just and proper.  A proposed form of order is attached as an exhibit hereto.

Dated: January 23, 2020  Respectfully submitted,

ICE MILLER LLP

*/s/* Louis T. DeLucia
Louis T. DeLucia (admitted *pro hac vice*)
Alyson M. Fiedler (admitted *pro hac vice*)
1500 Broadway, Suite 2900
New York, NY 10036
Telephone: (212) 835-6312
Email:  louis.delucia@icemiller.com
Telephone:  (212) 835-6315
Email:  alyson.fiedler@icemiller.com

Jeffrey A. Hokanson
One American Square, Suite 2900
Indianapolis, IN 46282-0200
Telephone: (317) 236-2100
Email: jeff.hokanson@icemiller.com

HAMMERSCHMIDT, AMARAL & JONAS P.C.

R. William Jonas Jr.
137 N. Michigan Street
South Bend, IN 46601
Telephone: (574) 400-8608
Email: rwj@hajlaw.com

*Counsel for the Official Committee of Unsecured Creditors*

CO\6312357.9