assets to KeyBank on July 12, 2019, which was perfected on July 15, 2019, both of which occurred within the 90 days prior to the Petition Date.

54. The Khan Lien was for the benefit of KeyBank and on account of an antecedent debt that KeyBank claims was owed by Mr. Khan before the Khan Lien was granted. Specifically, KeyBank claims that Mr. Khan guaranteed the obligations of Interlogic under the Master Services Agreement. No guaranty has ever been produced.

55. Mr. Khan is presumed to have been insolvent during the 90 days prior to the Petition Date and was, in fact, insolvent when the Khan Lien was granted.

56. The Khan Lien enables KeyBank to receive more than it would receive if the case were one under chapter 7 of the Bankruptcy Code, the transfer had not been made, and if KeyBank received payment of the debt to the extent provided by the Bankruptcy Code.

**WHEREFORE**, Mr. Khan respectfully requests that this Honorable Court avoid the Khan Lien pursuant to 11 U.S.C. §547(b) and grant such other and further relief as this Court deems just and proper considering the facts and circumstances of this case.

### COUNT TWO
### AVOIDANCE OF KHAN VEHICLE LIENS UNDER 11 U.S.C. §547(b)

57. The Debtors incorporate the allegations in Paragraph 1 thru 56 as though fully set forth herein.

58. The Khan Vehicle Liens were transfers of interests of Mr. Khan in property that occurred within the 90 days prior to the Petition Date. Mr. Khan granted a security interest in all of his assets, including vehicles, to KeyBank on July 12, 2019. Upon information and belief, after July 12, 2019, KeyBank utilized the Limited Power of Attorney granted to it by Mr. Khan to begin to attempt to perfect its interest in the vehicles by naming itself as a lienholder on the vehicle titles.

59. The Khan Vehicle Liens were for the benefit of KeyBank and on account of an antecedent debt that KeyBank claims was owed by Mr. Khan before the Khan Vehicle Liens were granted. Specifically, KeyBank claims that Mr. Khan guaranteed the obligations of Interlogic under the Master Services Agreement.

60. Mr. Khan is presumed to have been insolvent during the 90 days prior to the Petition Date and was, in fact, insolvent when the Khan Vehicle Liens were granted.

61. The Khan Vehicle Liens enable KeyBank to receive more than it would have received if the case were one under chapter 7 of the Bankruptcy Code, the transfers had not been made, and if KeyBank received payment of the debt to the extent provided by the Bankruptcy Code.

**WHEREFORE**, Mr. Khan respectfully requests that this Honorable Court avoid the Khan Vehicle Liens pursuant to 11 U.S.C. §547(b) and grant such other and further relief as this Court deems just and proper considering the facts and circumstances of this case.

**COUNT THREE**
**AVOIDANCE OF KHAN STOCK TRANSFERS UNDER 11 U.S.C. §547(b)**

62. The Debtors incorporate the allegations in Paragraph 1 thru 61 as though fully set forth herein.

63. The Khan Stock Transfers were transfers of interests of Mr. Khan in property that occurred within the 90 days prior to the Petition Date. Mr. Khan granted a security interest in all of his assets, including his capital stock and equity interests, to KeyBank on July 12, 2019 through the execution of the Khan Security Agreement and the Pledge Agreement and, on or about July 19, 2019, executed stock transfer documents transferring the capital stock and equity interests to KeyBank.

12

64. The Khan Stock Transfers were for the benefit of KeyBank and on account of an antecedent debt that KeyBank claims was owed by Mr. Khan before the Khan Stock Transfers were made. Specifically, KeyBank claims that Mr. Khan guaranteed the obligations of Interlogic under the Master Services Agreement.

65. Mr. Khan is presumed to have been insolvent during the 90 days prior to the Petition Date and was, in fact, insolvent when the Khan Stock Transfers occurred.

66. The Khan Stock Transfers enable KeyBank to receive more than it would receive if the case were one under chapter 7 of the Bankruptcy Code, the transfers had not been made, and if KeyBank received payment of the debt to the extent provided by the Bankruptcy Code.

**WHEREFORE**, Mr. Khan respectfully requests that this Honorable Court avoid the Khan Stock Transfers pursuant to 11 U.S.C. §547(b) and grant such other and further relief as this Court deems just and proper considering the facts and circumstances of this case.

**COUNT FOUR**
**AVOIDANCE OF KHAN LIEN UNDER 11 U.S.C. §548(a)(1)(B)**

67. The Debtors incorporate the allegations in Paragraph 1 thru 66 as though fully set forth herein.

68. The Khan Lien is a transfer of an interest of Mr. Khan in property that occurred within the two (2) years prior to the Petition Date. Mr. Khan granted a security interest in all of his assets to KeyBank on July 12, 2019, which was perfected on July 15, 2019, both of which occurred within the two (2) years prior to the Petition Date.

69. Mr. Khan received no value or less than reasonably equivalent value in exchange for the Khan Lien.

70. Mr. Khan was insolvent when the Khan Lien was granted or became insolvent as a result of the Khan Lien being granted.

71. In the alternative, Mr. Khan was engaged in a business or a transaction, or was about to engage in a business or a transaction, for which any property remaining with him was an unreasonably small capital or Mr. Khan intended to incur, or believe that he would incur, debts that would be beyond his ability to pay as such debts matured.

**WHEREFORE**, Mr. Khan respectfully requests that this Honorable Court avoid the Khan Lien pursuant to 11 U.S.C. §548(a)(1)(B) and grant such other and further relief that this Court deems just and proper considering the facts and circumstances of this case.

## COUNT FIVE
## AVOIDANCE OF KHAN VEHICLE LIENS UNDER 11 U.S.C. §548(a)(1)(B)

72. The Debtors incorporate the allegations in Paragraph 1 thru 71 as though fully set forth herein.

73. The Khan Vehicle Liens are a transfers of interests of Mr. Khan in property that occurred within the two (2) years prior to the Petition Date. Mr. Khan granted a security interest in all of his assets, including vehicles, to KeyBank on July 12, 2019. Upon information and belief, after July 12, 2019, within the two (2) years prior to the Petition Date, KeyBank utilized the Limited Power of Attorney granted to it by Mr. Khan to attempt to perfect its interest in the vehicles by naming itself as a lienholder on the vehicle titles.

74. Mr. Khan received no value or less than reasonable equivalent value in exchange for the Khan Vehicle Liens.

75. Mr. Khan was insolvent when the Khan Vehicle Liens were granted or became insolvent as a result of the Khan Vehicle Liens being granted.

14

76. In the alternative, Mr. Khan was engaged in a business or a transaction, or was about to engage in a business or a transaction, for which any property remaining with him was an unreasonably small capital or Mr. Khan intended to incur, or believed that he would incur, debts that would be beyond his ability to pay as such debts matured.

**WHEREFORE**, Mr. Khan respectfully requests that this Honorable Court avoid the Khan Vehicle Liens pursuant to 11 U.S.C. §548(a)(1)(B) and grant such other and further relief that this Court deems just and proper considering the facts and circumstances of this case.

### COUNT SIX
### AVOIDANCE OF KHAN STOCK TRANSFERS UNDER 11 U.S.C. §548(a)(1)(B)

77. The Debtors incorporate the allegations in Paragraph 1 thru 76 as though fully set forth herein.

78. The Khan Stock Transfers were transfers of interests of Mr. Khan in property that occurred within the two (2) years prior to the Petition Date. Mr. Khan granted a security interest in all of his assets, including his capital stock and equity interests, to KeyBank on July 12, 2019 through the execution of the Khan Security Agreement and the Pledge Agreement and, on or about July 19, 2019, executed stock transfer documents transferring the capital stock and equity interests to KeyBank.

79. Mr. Khan received no value or less than reasonably equivalent value in exchange for the Khan Stock Transfers.

80. Mr. Khan was insolvent when the Khan Stock Transfers were made or became insolvent as a result of the Khan Stock Transfers.

81. In the alternative, Mr. Khan was engaged in a business or a transaction, or was about to engage in a business or a transaction, for which any property remaining with him was an

15

unreasonably small capital or Mr. Khan intended to incur, or believed that he would incur, debts that would be beyond his ability to pay as such debts matured.

**WHEREFORE**, Mr. Khan respectfully requests that this Honorable Court avoid the Khan Stock Transfers pursuant to 11 U.S.C. §548(a)(1)(B) and grant such other and further relief that this Court deems just and proper considering the facts and circumstances of this case.

## COUNT SEVEN
## AVOIDANCE OF KHAN OBLIGATION UNDER 11 U.S.C. §548(a)(1)(B)

82. The Debtors incorporate the allegations in Paragraph 1 thru 81 as though fully set forth herein.

83. KeyBank claims that Mr. Khan is obligated on the debt due and owing to it by Interlogic ("Khan Obligation").

84. To the extent KeyBank is able to produce a document demonstrating Mr. Khan is obligated on the debt and such document was executed within the two (2) years prior to the Petition Date, such obligation is avoidable under 11 U.S.C. §548(a)(1)(B).

85. Mr. Khan received no value or less than reasonably equivalent value in exchange for the Khan Obligation.

86. Mr. Khan was insolvent when the Khan Obligation was incurred or became insolvent as a result of the Khan Obligation.

87. In the alternative, Mr. Khan was engaged in a business or a transaction, or was about to engage in a business or a transaction, for which any property remaining with him was an unreasonably small capital or Mr. Khan intended to incur, or believed that he would incur, debts that would be beyond his ability to pay as such debts matured.

**WHEREFORE**, Mr. Khan respectfully requests that this Honorable Court avoid the Khan Obligation pursuant to 11 U.S.C. §548(a)(1)(B) and grant such other and further relief that this Court deems just and proper considering the facts and circumstances of this case.

## COUNT EIGHT
## AVOIDANCE OF SARAH AIR LIEN UNDER 11 U.S.C. §547(b)

88. The Debtors incorporate the allegations in Paragraph 1 thru 87 as though fully set forth herein.

89. The Sarah Air Lien was a transfer of an interest of Sarah Air in property that occurred within the 90 days prior to the Petition Date. Sarah Air granted a security interest in all of its assets to KeyBank on July 12, 2019 through the execution of the Khan Security Agreement and the Aircraft Security Agreement.

90. The Sarah Air Lien was for the benefit of KeyBank and on account of an antecedent debt that KeyBank claims is owed by Sarah Air before the Sarah Air Lien was made. Specifically, KeyBank claims that Sarah Air guaranteed the obligations of Interlogic under the Master Services Agreement.

91. Sarah Air is presumed to have been insolvent during the 90 days prior to the Petition Date and was, in fact, insolvent when the Sarah Air Lien was granted.

92. The Sarah Air Lien enabled KeyBank to receive more than it would receive if the case were one under chapter 7 of the Bankruptcy Code, the transfers had not been made, and if KeyBank received payment of the debt to the extent provided by the Bankruptcy Code.

**WHEREFORE**, Sarah Air respectfully requests that this Honorable Court avoid the Sarah Air Lien pursuant to 11 U.S.C. §547(b) and grant such other and further relief as this Court deems just and proper considering the facts and circumstances of this case.

17

## COUNT NINE
## AVOIDANCE OF SARAH AIR LIEN UNDER 11 U.S.C. §548(a)(1)(B)

93. The Debtors incorporate the allegations in Paragraph 1 thru 92 as though fully set forth herein.

94. The Sarah Air Lien is a transfer of an interest of Sarah Air in property that occurred within the two (2) years prior to the Petition Date. Sarah Air granted a security interest in all of its assets to KeyBank on July 12, 2019 through the execution of the Khan Security Agreement and the Aircraft Security Agreement.

95. Sarah Air received no value or less than reasonably equivalent value in exchange for the Sarah Air Lien.

96. Sarah Air was insolvent when the Sarah Air Lien was granted or became insolvent as a result of the Sarah Air Lien being granted.

97. In the alternative, Sarah Air was engaged in a business or a transaction, or was about to engage in a business or a transaction, for which any property remaining with it was an unreasonably small capital or Sarah Air intended to incur, or believe that it would incur, debts that would be beyond its ability to pay as such debts matured.

**WHEREFORE**, Sarah Air respectfully requests that this Honorable Court avoid the Sarah Air Lien pursuant to 11 U.S.C. §548(a)(1)(B) and grant such other and further relief that this Court deems just and proper considering the facts and circumstances of this case.

## COUNT TEN
## AVOIDANCE OF SARAH AIR OBLIGATION UNDER 11 U.S.C. §548(a)(1)(B)

98. The Debtors incorporate the allegations in Paragraph 1 thru 97 as though fully set forth herein.

99. KeyBank claims that Sarah Air is obligated on the debt due and owing to it by Interlogic ("Sarah Air Obligation").

100. To the extent KeyBank is able to produce a document demonstrating the Sarah Air is obligated on the debt and such document was executed within the two (2) years prior to the Petition Date, such obligation is avoidable under 11 U.S.C. §548(a)(1)(B).

101. Sarah Air received no value or less than reasonably equivalent value in exchange for the Sarah Air Obligation.

102. Sarah Air was insolvent when the Sarah Air Obligation was incurred or became insolvent as a result of the Sarah Air Obligation.

103. In the alternative, Sarah Air was engaged in a business or a transaction, or was about to engage in a business or a transaction, for which any property remaining with it was an unreasonably small capital or Sarah Air intended to incur, or believed that it would incur, debts that would be beyond his ability to pay as such debts matured.

**WHEREFORE**, Sarah Air respectfully requests that this Honorable Court avoid the Sarah Air Obligation pursuant to 11 U.S.C. §548(a)(1)(B) and grant such other and further relief that this Court deems just and proper considering the facts and circumstances of this case.

### COUNT ELEVEN
### AVOIDANCE OF KHAN AVIATION LIEN UNDER 11 U.S.C. §547(b)

104. The Debtors incorporate the allegations in Paragraph 1 thru 103 as though fully set forth herein.

105. The Khan Aviation Lien was a transfer of an interest of Khan Aviation in property that occurred within the 90 days prior to the Petition Date. Khan Aviation granted a security

interest in all of its assets to KeyBank on July 19, 2019 through the execution of the Khan Security Agreement and the Khan Aviation Aircraft Security Agreement.

106. The Khan Aviation Lien was for the benefit of KeyBank and on account of an antecedent debt that KeyBank claims is owed by Khan Aviation before the Khan Aviation Lien was made. Specifically, KeyBank claims that Khan Aviation guaranteed the obligations of Interlogic under the Master Services Agreement.

107. Khan Aviation is presumed to have been insolvent during the 90 days prior to the Petition Date and was, in fact, insolvent when the Khan Aviation Lien was granted.

108. The Khan Aviation Lien enabled KeyBank to receive more than it would receive if the case were one under chapter 7 of the Bankruptcy Code, the transfers had not been made, and if KeyBank received payment of the debt to the extent provided by the Bankruptcy Code.

**WHEREFORE**, Khan Aviation respectfully requests that this Honorable Court avoid the Sarah Air Lien pursuant to 11 U.S.C. §547(b) and grant such other and further relief as this Court deems just and proper considering the facts and circumstances of this case.

**COUNT TWELVE**
**AVOIDANCE OF KHAN AVIATION LIEN UNDER 11 U.S.C. §548(a)(1)(B)**

109. The Debtors incorporate the allegations in Paragraph 1 thru 108 as though fully set forth herein.

110. The Khan Aviation Lien is a transfer of an interest of Khan Aviation in property that occurred within the two (2) years prior to the Petition Date. Khan Aviation granted a security interest in all of its assets to KeyBank on July 19, 2019 through the execution of the Khan Aviation Security Agreement and the Khan Aviation Aircraft Security Agreement.

111. Khan Aviation received no value or less than reasonably equivalent value in exchange for the Khan Aviation Lien.

112. Khan Aviation was insolvent when the Khan Aviation Lien was granted or became insolvent as a result of the Khan Aviation Lien being granted.

113. In the alternative, Khan Aviation was engaged in a business or a transaction, or was about to engage in a business or a transaction, for which any property remaining with it was an unreasonably small capital or Khan Aviation intended to incur, or believed that it would incur, debts that would be beyond its ability to pay as such debts matured.

**WHEREFORE**, Khan Aviation respectfully requests that this Honorable Court avoid the Khan Aviation Lien pursuant to 11 U.S.C. §548(a)(1)(B) and grant such other and further relief that this Court deems just and proper considering the facts and circumstances of this case.

## COUNT THIRTEEN
## AVOIDANCE OF KHAN AVIATION OBLIGATION UNDER 11 U.S.C. §548(a)(1)(B)

114. The Debtors incorporate the allegations in Paragraph 1 thru 113 as though fully set forth herein.

115. The Khan Aviation Obligation is an obligation that was incurred within the two (2) years prior to the Petition Date.

116. Khan Aviation received no value or less than reasonably equivalent value in exchange for the Khan Aviation Obligation.

117. Khan Aviation was insolvent when the Khan Aviation Obligation was incurred or became insolvent as a result of the Khan Aviation Obligation.

118. In the alternative, Khan Aviation was engaged in a business or a transaction, or was about to engage in a business or a transaction, for which any property remaining with it was an

unreasonably small capital or Sarah Air intended to incur, or believe that it would incur, debts that would be beyond his ability to pay as such debts matured.

**WHEREFORE**, Khan Aviation respectfully requests that this Honorable Court avoid the Khan Aviation Obligation pursuant to 11 U.S.C. §548(a)(1)(B) and grant such other and further relief that this Court deems just and proper considering the facts and circumstances of this case.

### COUNT FOURTEEN
### AVOIDANCE OF KRW LIEN UNDER 11 U.S.C. §547(b)

119. The Debtors incorporate the allegations in Paragraph 1 thru 118 as though fully set forth herein.

120. The KRW Lien was a transfer of an interest of KRW Investments in property that occurred within the 90 days prior to the Petition Date. KRW Investments granted a security interest in all of its assets to KeyBank on July 19, 2019 through the execution of the KRW Investments Security Agreement.

121. The KRW Lien was for the benefit of KeyBank and on account of an antecedent debt that KeyBank claims is owed by KRW Investments before the KRW Lien was made. Specifically, KeyBank claims that KRW Investments guaranteed the obligations of Interlogic under the Master Services Agreement.

122. KRW Investments is presumed to have been insolvent during the 90 days prior to the Petition Date and was, in fact, insolvent when the KRW Lien was granted.

123. The KRW Lien enabled KeyBank to receive more than it would receive if the case were one under chapter 7 of the Bankruptcy Code, the transfers had not been made, and if KeyBank received payment of the debt to the extent provided by the Bankruptcy Code.