## COUNT TWENTY FIVE
## AVOIDANCE OF NJ REALTY DEED OF TRUST UNDER 11 U.S.C. §547(b)

179.    The Debtors incorporate the allegations in Paragraph 1 thru 178 as though fully set forth herein.

180.    The NJ Realty Deed of Trust was a transfer of an interest of NJ Realty in property that occurred within the 90 days prior to the Petition Date.

181.    The NJ Realty Deed of Trust was for the benefit of KeyBank and on account of an antecedent debt that KeyBank claims was owed by NJ Realty before the NJ Realty Deed of Trust was granted. Specifically, KeyBank claims that NJ Realty guaranteed the obligations of Interlogic under the Master Services Agreement.

182.    NJ Realty is presumed to be insolvent during the 90 days prior to the Petition Date and was, in fact, insolvent when the NJ Realty Deed of Trust was granted.

183.    The NJ Realty Deed of Trust enables KeyBank to receive more than it would receive if the case were one under chapter 7 of the Bankruptcy Code, the transfer had not been made, and if KeyBank received payment of the debt to the extent provided by the Bankruptcy Code.

**WHEREFORE**, NJ Realty respectfully requests that this Honorable Court avoid the NJ Realty Deed of Trust pursuant to 11 U.S.C. §547(b) and grant such other and further relief as this Court deems just and proper considering the facts and circumstances of this case.

## COUNT TWENTY SIX
## AVOIDANCE OF NJ REALTY DEED OF TRUST UNDER 11 U.S.C. §548(a)(1)(B)

184.    The Debtors incorporate the allegations in Paragraph 1 thru 183 as though fully set forth herein.

185. The NJ Realty Deed of Trust is a transfer of an interest of NJ Realty in property that occurred within the two (2) years prior to the Petition Date.

186. NJ Realty received no value or less than reasonably equivalent value in exchange for the NJ Realty Deed of Trust.

187. NJ Realty was insolvent when the NJ Realty Deed of Trust was granted or became insolvent as a result of the NJ Realty Deed of Trust being granted.

188. In the alternative, NJ Realty was engaged in a business or a transaction, or was about to engage in a business or a transaction, for which any property remaining with it was an unreasonably small capital or NJ Realty intended to incur, or believe that it would incur, debts that would be beyond his ability to pay as such debts matured.

**WHEREFORE** NJ Realty respectfully requests that this Honorable Court avoid the NJ Realty Deed of Trust pursuant to 11 U.S.C. §548(a)(1)(B) and grant such other and further relief that this Court deems just and proper considering the facts and circumstances of this case.

**COUNT TWENTY SEVEN**
**AVOIDANCE OF NJ REALTY OBLIGATION UNDER 11 U.S.C. §548(a)(1)(B)**

189. The Debtors incorporate the allegations in Paragraph 1 thru 188 as though fully set forth herein.

190. KeyBank claims that NJ Realty is obligated on the debt due and owing to it by Interlogic ("NJ Realty Obligation").

191. To the extent KeyBank is able to produce a document demonstrating that NJ Realty is obligated on the debt and such document was executed within the two (2) years prior to the Petition Date, such obligation is avoidable under 11 U.S.C. §548(a)(1)(B).

192. NJ Realty received no value or less than reasonably equivalent value in exchange for the NJ Realty Obligation

193. NJ Realty was insolvent when the NJ Realty Obligation was incurred or became insolvent as a result of the NJ Realty Obligation.

194. In the alternative, NJ Realty was engaged in a business or a transaction, or was about to engage in a business or a transaction, for which any property remaining with it was an unreasonably small capital or NJ Realty intended to incur, or believe that it would incur, debts that would be beyond his ability to pay as such debts matured.

**WHEREFORE**, NJ Realty respectfully requests that this Honorable Court avoid the NJ Realty Obligation pursuant to 11 U.S.C. §548(a)(1)(B) and grant such other and further relief that this Court deems just and proper considering the facts and circumstances of this case.

### COUNT TWENTY EIGHT
### AVOIDANCE OF NAK HOLDINGS VEHICLE LIENS UNDER 11 U.S.C. §547(b)

195. The Debtors incorporate the allegations in Paragraph 1 thru 194 as though fully set forth herein.

196. The NAK Holdings Vehicle Liens were transfers of interests of NAK Holdings in property that occurred within the 90 days prior to the Petition Date. Upon information and belief, after July 12, 2019, KeyBank utilized the Limited Power of Attorney granted to it by NAK Holdings to name itself as a lienholder on the vehicle titles.

197. The NAK Holdings Vehicle Liens were for the benefit of KeyBank and on account of an antecedent debt that KeyBank claims was owed by NAK Holdings before the NAK Holdings Vehicle Liens were granted. Specifically, KeyBank claims that NAK Holdings guaranteed the obligations of Interlogic under the Master Services Agreement.

198. NAK Holdings is presumed to have be insolvent during the 90 days prior to the Petition Date and was, in fact, insolvent when the NAK Holdings Vehicle Liens were granted.

199. The NAK Holdings Vehicle Liens enable KeyBank to receive more than it would receive if the case were one under chapter 7 of the Bankruptcy Code, the transfers had not been made, and if KeyBank received payment of the debt to the extent provided by the Bankruptcy Code.

**WHEREFORE**, NAK Holdings respectfully requests that this Honorable Court avoid the NAK Holdings Vehicle Liens pursuant to 11 U.S.C. §547(b) and grant such other and further relief as this Court deems just and proper considering the facts and circumstances of this case.

## COUNT TWENTY NINE
## AVOIDANCE OF NAK HOLDINGS VEHICLE LIENS UNDER 11 U.S.C. §548(a)(1)(B)

200. The Debtors incorporate the allegations in Paragraph 1 thru 199 as though fully set forth herein.

201. The NAK Holdings Vehicle Liens are a transfers of interests of NAK Holdings in property that occurred within the two (2) years prior to the Petition Date. Upon information and belief, after July 12, 2019, within the two (2) years prior to the Petition Date, KeyBank utilized the Limited Power of Attorney granted to it by NAK Holdings to perfect its interest in the vehicles by naming itself as a lienholder on the vehicle titles.

202. NAK Holdings received no value or less than reasonable equivalent value in exchange for the NAK Holdings Vehicle Liens.

203. NAK Holdings was insolvent when the NAK Holdings Vehicle Liens were granted or became insolvent as a result of the NAK Holdings Vehicle Liens being granted.

204. In the alternative, NAK Holdings was engaged in a business or a transaction, or was about to engage in a business or a transaction, for which any property remaining with it was an unreasonably small capital or NAK Holdings intended to incur, or believe that it would incur, debts that would be beyond its ability to pay as such debts matured.

**WHEREFORE**, NAK Holdings respectfully requests that this Honorable Court avoid the NAK Holdings Vehicle Liens pursuant to 11 U.S.C. §548(a)(1)(B) and grant such other and further relief that this Court deems just and proper considering the facts and circumstances of this case.

## COUNT THIRTY
## AVOIDANCE OF NAK HOLDINGS OBLIGATION UNDER 11 U.S.C. §548(a)(1)(B)

205. The Debtors incorporate the allegations in Paragraph 1 thru 204 as though fully set forth herein.

206. KeyBank claims that NAK Holdings is obligated on the debt due and owing to it by Interlogic ("NAK Holdings Obligation").

207. To the extent KeyBank is able to produce a document demonstrating that NAK Holdings is obligated on the debt and such document was executed within the two (2) years prior to the Petition Date, such obligation is avoidable under 11 U.S.C. §548(a)(1)(B).

208. NAK Holdings received no value or less than reasonably equivalent value in exchange for the NAK Holdings Obligation.

209. NAK Holdings was insolvent when the NAK Holdings Obligation was incurred or became insolvent as a result of the NAK Holdings.

210. In the alternative, NAK Holdings was engaged in a business or a transaction, or was about to engage in a business or a transaction, for which any property remaining with it was

37

an unreasonably small capital or NAK Holdings intended to incur, or believe that it would incur, debts that would be beyond its ability to pay as such debts matured.

**WHEREFORE**, NAK Holdings respectfully requests that this Honorable Court avoid the NAK Holdings Obligation pursuant to 11 U.S.C. §548(a)(1)(B) and grant such other and further relief that this Court deems just and proper considering the facts and circumstances of this case.

**COUNT THIRTY ONE**
**AVOIDANCE AND RECOVERY OF TRANSFER OF PROCEEDS OF SALE OF AIRCRAFT UNDER 11 U.S.C. § 547(b) AND 11 U.S.C. §550**

211. The Debtors incorporate the allegations in Paragraph 1 thru 210 as though fully set forth herein.

212. On August 13, 2019, the proceeds of the sale of the Aircraft in the amount of $290,000 was transferred by Sarah Air to KeyBank via wire transfer.

213. The transfer of the $290,000 to KeyBank was a transfer of an interest of Sarah Air in property that occurred within the 90 days prior to the Petition Date.

214. The transfer of the $290,000 to KeyBank was for the benefit of Key Bank and on account of an antecedent debt that KeyBank claims was owed by Sarah Air before the transfer occurred. Specifically, KeyBank claims that Sarah Air guaranteed the obligations of Interlogic under the Master Services Agreement.

215. Sarah Air is presumed to be insolvent during the 90 days prior to the Petition Date and was, in fact, insolvent when it transferred the $290,000 to Key Bank.

216. The transfer of the $290,000 to KeyBank by Sarah Air enables KeyBank to receive more than it would receive if the case were one under chapter 7 of the Bankruptcy Code,

the transfer had not been made, and if KeyBank received payment of the debt to the extent provided by the Bankruptcy Code.

**WHEREFORE**, Sarah Air respectfully requests that this Honorable Court avoid the transfer of the $290,000 to KeyBank pursuant to 11 U.S.C. §547(b), require the KeyBank turnover the $290,000 to Sarah Air pursuant to 11 U.S.C. §550 and grant such other and further relief as this Court deems just and proper considering the facts and circumstances of this case.

### COUNT THIRTY TWO
### AVOIDANCE AND RECOVERY OF TRANSFER OF PROCEEDS OF SALE OF HELICOPTER UNDER 11 U.S.C. § 547(b) and 11 U.S.C. § 550

217. The Debtors incorporate the allegations in Paragraph 1 through 216 as though fully set forth herein.

218. On August 30, 2019, the proceeds of the sale of the Helicopter owned by Khan Aviation in the amount of $525,000.00 were transferred by Khan Aviation to KeyBank via wire transfer.

219. The transfer of the $525,000.00 to KeyBank was a transfer of interest of Khan Aviation in property that occurred within 90 days prior to the Petition Date.

220. The transfer of the $525,000.00 to KeyBank was for the benefit of KeyBank and on the account of an antecedent debt that KeyBank claims was owed by Khan Aviation before the transfer occurred. Specifically KeyBank claims that Khan Aviation guaranteed the obligations of Interlogic under the Master Service Agreement.

221. Khan Aviation is presumed to be insolvent during the 90 days prior to the Petition Date and was, in fact, insolvent when it transferred the $525,000.00 to KeyBank.

222. Transfer of the $525,000.00 to KeyBank by Khan Aviation enabled KeyBank to receive more than it would receive if the case were one under Chapter 7 of the Bankruptcy Code,

if the transfer had not been made and if KeyBank received payment of the debt to the extent provided by the Bankruptcy Code.

WHEREFORE, Khan Aviation respectfully requests that the Honorable Court avoid the transfer of the $525,000.00 to KeyBank pursuant to 11 U.S.C. § 547(b), require that KeyBank turn over the $525,000.00 to Khan Aviation pursuant to 11 U.S.C. § 550 and grant such other and further relief as this Court deems just and proper concerning the facts and circumstances of this case.

## COUNT THIRTY THREE
### AVOIDANCE AND TRANSFER OF PROCEEDS OF SALE OF STORAGE BUILDING UNDER 11 U.S.C. § 547(b) AND 11 U.S.C. § 550

223. The Debtors incorporate the allegations in Paragraph 1 through 222 as though fully set forth herein.

224. On October 7, 2019, the proceeds of the sale of the storage building owned by KRW Investments, Inc. in the amount of $350,000.00 were transferred by KRW Investments, Inc. to KeyBank via wire transfer.

225. The transfer of the $350,000.00 to KeyBank was a transfer of interest of KRW Investments, Inc. that occurred within 90 days prior to the Petition Date.

226. The transfer of the $350,000.00 to KeyBank was for the benefit of KeyBank and on the account of an antecedent debt that KeyBank claims was owed by KRW Investments, Inc. before the transfer occurred. Specifically KeyBank claims that KRW Investments, Inc. guaranteed the obligations of Interlogic under the Master Service Agreement.

227. KRW Investments, Inc. is presumed to be insolvent during the 90 days prior to the Petition Date and was, in fact, insolvent when it transferred the $350,000.00 to KeyBank.

228. Transfer of the $350,000.00 to KeyBank by KRW Investments, Inc. enabled KeyBank to receive more than it would receive if the case were one under Chapter 7 of the Bankruptcy Code, if the transfer had not been made and if KeyBank received payment of the debt to the extent provided by the Bankruptcy Code.

WHEREFORE, KRW Investments, Inc. respectfully requests that the Honorable Court avoid the transfer of the $350,000.00 to KeyBank pursuant to 11 U.S.C. § 547(b), require that KeyBank turn over the $350,000.00 to KRW Investments, Inc. pursuant to 11 U.S.C. § 550 and grant such other and further relief as this Court deems just and proper concerning the facts and circumstances of this case.

Respectfully submitted,

WARDROP & WARDROP, P.C.

Dated: October 17, 2019

By: _____
Robert F. Wardrop II (P31639)
Business Address:
   300 Ottawa Avenue, NW, Suite 150
   Grand Rapids, MI 49503
   (616) 459-1225

534301101719.Complaint KeyBank